UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

TED DIMOND, Individually and on
Behalf of All Others Similarly Situated,

Plaintiffs,

- against -

DARDEN RESTAURANTS, INC. and
GMRI, INC., d/b/a OLIVE GARDEN
and RED LOBSTER, and DARDEN
CONCEPTS, INC.,

Defendants.

Case No. 1:13-cv-5244 (KPF)

**<u>PLAINTIFF'S MEMORANDUM</u>**

**<u>IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS</u>**

**<u>THE FOURTH AMENDED COMPLAINT</u>**

## TABLE OF CONTENTS

**Page(s)**

TABLE OF AUTHORITIES ................................................................................ ii

I.  INTRODUCTION ..................................................................................1

II.  ARGUMENT .........................................................................................4

    A.  The Legal Standard on a Motion to Dismiss ................................4

    B.  The Legal Standard for a GBL § 349 Claim ................................5

    C.  Defendants' Imposition of the
        18% "Gratuity" was Materially Misleading ................................7

        1.  Defendants' "Disclosure" was not Accurate ...................7

        2.  Defendants' "Automatic Gratuities"
            Violate New York City Rules .......................................10

    D.  Plaintiff Adequately Pleads a Cognizable Injury
        Related to the Gratuity and the No Price Beverage Policy.................12

    E.  The Omission of Prices for Beverages is Materially Misleading ............15

    F.  Plaintiff Has Standing to Bring the No Price Claim.................................19

    G.  Plaintiff's GBL § 349 Claim Can Stand By Itself ....................................19

    H.  Plaintiff's GBL § 349 Claim is Not
        Preempted by 6 RCNY § 5-59 and NYCAC § 20-700...............................19

    I.  Plaintiff's GBL § 349 Claims May Rest
       on Violations of 6 RCNY § 5-59 and NYCAC § 20-700.........................23

III.  CONCLUSION ...................................................................................24

i

## TABLE OF AUTHORITIES

**CASES**                                                                     **Page(s)**

*Anderson News LLC v. American Media, Inc.,*
  680 F.3d 162 (2d Cir. 2012) ....................................................................5

*Ashcroft v. Iqbal,*
  556 U.S. 662 (2009) ......................................................................5, 13

*Bell Atlantic Corp. v. Twombly,*
  550 U.S. 544 (2007) ......................................................................5, 13

*Broder v. Cablevision Systems Corp.,*
  418 F.3d 187 (2d Cir. 2005) ............................................................21, 22

*Bynog v. Cipriani Group, Inc.,*
  298 A.D.2d 164 (1st Dep't 2002) ..........................................................7

*Cohen v. JP Morgan Chase & Co ("Cohen I").,*
  498 F.3d 111 (2d Cir. 2007) ..............................................................23

*Cohen v. JP Morgan Chase & Co.,*
  608 F. Supp. 2d 330 (E.D.N.Y. 2009) ...............................................23, 24

*Conboy v. AT&T Corp.,*
  241 F.3d 242 (2d Cir. 2001) .............................................................21, 22

*Derbaremdiker v. Applebee's International, Imc.,*
  No. 12-CV-01058 (KAM),
  2012 U.S. Dist. LEXIS 138596 (E.D.N.Y. Sept. 26, 2012) ............................9

*Dugan v. TGI Friday's, Inc.,*
  No. A-3098-10T2, 2011 N.J. Super. Unpub. LEXIS 2649
  (App. Div. Oct. 25, 2011) ................................................................16

*Dupler v. Costco Wholesale Corp.,*
  249 F.R.D. 29 (E.D.N.Y. 2008) ..........................................................17

*Flattau v. John Hancock Mutual Life Insurance Co.,*
  No. 85 Civ. 5487 (JFK), 1986 U.S. Dist. LEXIS 16537 (S.D.N.Y. Dec. 12, 1986) ........6

*Matter of Food Parade, Inc. v. Office of Consumer Affairs of County of Nassau,*
  7 N.Y.3d 568 (2006) ....................................................................6, 15

*Llanos v. Shell Oil Co.,*
  55 A.D.3d 796 (2d Dep't 2008) ................................................................. 19, 20

*Lonner v. Simon Property Group,*
  57 A.D.3d 100 (2d Dep't 2008) ............................................................. 5, 13, 21

*Mendez v. Bank American Home Loans Servicing LP,*
  840 F. Supp. 2d 639 (E.D.N.Y. 2012) ............................................................. 6

*Michaelson v. The Ritz-Carlton Hotel Co., LLC,*
  No. G032032, 2004 Cal. App. Unpub. LEXIS 2609
  (Cal. App. 4th Dist. Mar. 22, 2004) ............................................................... 9

*Negrin v. Norwest Mortgage, Inc.,*
  263 A.D.2d 39 (2d Dep't 1999) ............................................................... 21, 24

*Oswego Laborer' Local 214 Pension Fund v. Marine Midland Bank,*
  85 N.Y.2d 20 (1995) ......................................................................... 6, 14

*Pauly v. Houlihan's Restaurants, Inc.,*
  C.A. No. 12-0025 (JBS/JS),
  2012 U.S. Dist. LEXIS 180215 (D.N.J. Dec. 20, 2012) .......................................... 16, 17

*Pelman ex rel. Pelman v. McDonald's Corp.,*
  396 F.3d 508 (2d Cir. 2005) ...................................................................... 4

*Restaurants and Patisseries Longchamps, Inc. v. Pedrick,*
  52 F. Supp. 174 (S.D.N.Y. 1943) .................................................................. 7

*Riordan v. Nationwide Mutual Fire Insurance Co.,*
  756 F. Supp. 732 (S.D.N.Y. 1990) ................................................................ 21

*Samiento v. World Yacht Inc.,*
  10 N.Y.3d 70 (2008) .............................................................................. 14

*Sarmiento v. World Yacht, Inc.,*
  No. 117224/05, 2006 N.Y. Misc. LEXIS 2419 (Sup. Ct., N.Y. Co. Aug. 10, 2006) ..... 14

*Small v. Lorillard Tobacco Co.,*
  94 N.Y.2d 43 (1999) .............................................................................. 14

*State of Arizona v. Autozone, Inc.,*
  258 P.3d 289 (Ariz. Ct. App. 2011), *vacated on other grounds,*
  275 P.3d 1278 (Ariz. 2012) ...................................................................... 17

*Stutman v. Chemical Bank,*
  95 N.Y.2d 24 (2000) ..................................................................................6, 7

*Walts v. First Union Mortgage Corp.,*
  259 A.D.2d 322 (1st Dep't 1999) .................................................................21

*Watkins v. DineEquity, Inc.,*
  C.A. No. 11-7182 (JBS/AMD),
  2012 U.S. Dist. LEXIS 122677 (D.N.J. Aug. 28, 2012) .................................15

*Watts v. Jackson Hewitt Tax Service, Inc.,*
  579 F. Supp. 2d 334 (E.D.N.Y. 2008) ...........................................................6

*Wilner v. Allstate Insurance Co.,*
  71 A.D.3d 155 (2d Dep't 2010) ...................................................................13

## STATUTES & RULES

Federal Rules of Civil Procedure
  Rule 8 ..............................................................................................................4
  Rule 12(b)(6) ...................................................................................................4

New Jersey Consumer Fraud Act ("CFA") .....................................................16

New York City Administrative Code ("NYCAC")
  § 20-700 ................................................................................................*passim*
  § 20-708.1 ......................................................................................................18
  § 20-708.1.3(c) ..............................................................................................18
  § 20-700.1.4 ..................................................................................................18

New York General Business Law ("GBL")
  § 349 ......................................................................................................*passim*
  § 396-i .....................................................................................................20, 21
  § 601 .......................................................................................................21, 22

New York Labor Law
  § 196-d .........................................................................................................14

New York Public Service Law
  § 224-a(4) .....................................................................................................22

New York Real Property Law
  § 274-a .........................................................................................................21

Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(b)....23, 24

Rules of the City of New York ("RCNY")
    6 RCNY § 5-59(a) ...............................................................................*passim*
    6 RCNY § 5-59(b) ...............................................................................*passim*

Suffolk County Code of Laws, Chapter 700 ................................................................18

**<u>OTHER AUTHORITIES</u>**

*Caliente Cab Restaurant Co.*,
    No. LL 5106869 (N.Y. City Dep't of Consumer Affairs June 29, 2006)................11, 12

*Ten & Eight Gourmet,*
    No. LL 5048585 (N.Y. City Dep't of Consumer Affairs Aug. 10, 2004) ...............11, 12

IRS Revenue Ruling 2012-18 ...................................................................................7, 10

I.      **INTRODUCTION**

Plaintiff's Fourth Amended Complaint ("FAC") alleges that defendants' restaurants violated GBL § 349 by imposing an 18% "gratuity" on all customer checks and by failing to list prices on their menus for most beverages. A GBL § 349 claim is one for deception. It is a wide ranging statute that is designed to prevent deceptive practices of all kinds and does not require reliance on the part of consumers.

In this case, there were two deceptive acts. First, the imposition of an 18% "gratuity" was deceptive because a "gratuity," by definition and by the rules of the United States Internal Revenue Service, is a *voluntary* act. By long custom and tradition, a gratuity, or "tip," is designed to signal the server as to the quality of his or her service. Presumably, if service is poor, the gratuity would be low or, even, nonexistent, thereby signaling that service must be improved. Conversely, excellent service can be rewarded with a higher gratuity.

Nevertheless, the essence of a gratuity is that it must be completely voluntary. Thus, the automatic addition of a fixed "gratuity" of 18% in the present case is a contradiction in terms and, therefore, deceptive. It suggests that the extra 18% charge is *both* voluntary (the term "gratuity") and involuntary (it is automatically added to each check).

It is important to note that the discussion of deception above can be made wholly without reference to any statute or regulation other than GBL § 349. *See* II (G) *infra*.

At the same time, a GBL § 349 claim is not preempted by 6 RCNY § 5-59 and NYCAC § 20-700 even though these regulations do not allow a private right of action. *See* II (H) *infra*. A GBL § 349 claim may also rest upon violations of other statutes and regulations even if they do not allow a private right of action. *See* II (I) *infra*.

1

Regardless of what defendants call the 18% charge, it is not a "gratuity" but rather an improper "surcharge." Defendants not only call their 18% surcharge a "gratuity," they also fail to disclose that such a charge is a violation of the Rules of the City of New York ("RCNY"), Title 6, § 5-59(a) that forbids adding any surcharges to listed prices. Nor can defendants successfully claim that even though they refer to an 18% "gratuity" it is really a legal "service charge" within the meaning of 6 RCNY § 5-59(b) since there is no additional service such as two persons splitting a meal or a per person minimum charge as required by 6 RCNY § 5-59(b).

Defendants' policy is clearly meant to confuse customers into thinking that a fixed 18% charge called a "gratuity" is a valid charge. Since customers expect to pay some gratuity, the fact that the 18% fixed charge is called a gratuity is designed to disarm in advance any possible controversy (as well as to keep "gratuities" artificially high). Defendants know that customers may initially find the 18% fixed "gratuity" an oddity (most restaurants do not follow that practice) but that they would be unlikely even to question that policy because of the implication that such a policy must be valid if it is being followed. Causing such deliberate confusion in order to induce a higher price for meals is deceptive within the meaning of GBL § 349. *See* II (C), *infra*.

Defendants' policy of failing to list prices for most beverages is also deceptive within the meaning of GBL § 349. By not listing prices, defendants are not held to any particular price as they are with all listed prices. They are free to charge any price with the understanding that most customers would not be inclined to raise questions about the price policy in the social setting of a restaurant experience. As a result, defendants make significant and unreasonably inflated profits on the sale of their beverages. Defendants

provide no justification for the no-price policy and, indeed, other than deceiving customers into paying more than they should for their beverages, there is no reasonable justification. *See* II (E), *infra*.

Plaintiffs have provided evidence of the deceptiveness of the fixed gratuity and no-price policies by referencing three Department of Consumer Affairs ("DCA") Notices of Violation. In one of those Notices of Violation, one of Defendants' restaurants is cited for the 18% fixed gratuity policy. FAC ¶ 21; Declaration of Robert Abrams ("Abrams Decl."), Exhibit ("Ex.") A.[1] The other two Notices of Violation cite the New York City Administrative Code ("NYCAC") § 20-700 that forbids "deceptive or unconscionable trade practice in the sale … of any consumer goods or services…." just as GBL § 349 does. FAC ¶ 31. In another Notice of Violation, the inspector explained, as plaintiff has, that the absence of prices has the "capacity, tendency and effect of misleading customers into believing that prices for the drinks and the beers on the menu are the same when in reality you can charge any price for any item." FAC ¶ 22, 32. Abrams Decl., Ex. B. In the third Notice of Violation, the DCA inspector wrote that "no prices can lead to confusion and over pricing to the public." Abrams Decl., Ex. C; FAC ¶ 23.

Again, the deceptiveness of the no-price policy can be shown without reference to any statute or regulation other than GBL § 349. Nevertheless, NYCAC § 20-700 and GBL § 349 both protect consumers in the same way; and the reports of New York City inspectors support plaintiff's explanation as to why defendants' no-price policy is

---

[1] While dismissing plaintiff's use of DCA Notices of Violation, Def. Br. at 14, n. 6, defendants attempt to support their arguments by reference to another DCA Notice of Violation. Def. Br. at 10, n.3, Exhibit 3. In that Notice, however, it is clear that the policy of an improper mandatory "gratuity" policy remains today ("Menu stated: An 18% gratuity will be added to all guest checks.").

3

deceptive.

Contrary to defendants' argument, plaintiff Dimond has standing to bring the no-price claim since he purchased a drink whose price was not listed. *See* II(F), *infra*; Abrams Decl., Ex. D. Plaintiff Dimond also suffered injury as a result of both the fixed 18% surcharge and the absence of price for drinks on the menu. Plaintiff Dimond's injury in regard to the fixed 18% surcharge was the entire 18% since the 18% surcharge was described as a "gratuity" and yet was not voluntary. Since the surcharge was not voluntary, it was not a gratuity. Moreover, even if the surcharge were to be considered a gratuity, any attempt to estimate what plaintiff would have given as a gratuity is pure speculation. Finally, since the surcharge is illegal under RCNY § 5-59(a), the entire 18% surcharge is illegal and, therefore, constitutes the damages for that claim in this case. As a result of defendants' failure to list a price for his beverage, Plaintiff Dimond's injury is the difference between what he paid and a reasonable price. *See* II (D), *infra*.

## II.    ARGUMENT

### A.    The Legal Standard on a Motion to Dismiss

"[A]n action under § 349 is not subject to the pleading-with-particularity requirements of Rule 9(b), Fed. R. Civ. P., but need only meet the bare-bones notice-pleading requirements of Rule 8(a), Fed. R. Civ. P." *Pelman ex rel. Pelman v. McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005) (citation omitted).

Federal Rule of Civil Procedure 8 requires that a complaint present a "short and plain statement of the claim showing that the pleader is entitled to relief." In order to meet this standard and survive a motion to dismiss under Rule 12(b)(6), "a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is

4

plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

In the plausibility analysis, the Court must accept all allegations in the pleading as true and "draw[ ] all reasonable inferences and resolve[ ] all conflicts and ambiguities in favor of plaintiffs." *Anderson News LLC v. Am. Media, Inc.*, 680 F.3d 162, 168 (2d Cir. 2012) (citing *Papelino v. Albany College of Pharmacy of Union Univ.*, 633 F.3d 81, 85 n.1 (2d Cir. 2011)). The Court must then determine whether the plaintiffs have pled enough facts to "nudge[] their claims across the line from conceivable to plausible . . ." *Twombly*, 550 U.S. at 570.

While the plausibility standard requires a plaintiff to show at the pleading stage that success on the merits is more than a sheer "possibility," it is not a "probability requirement." *Id. See also Anderson News*, 680 F.3d at 185 ("A court . . . may not properly dismiss a complaint that states a plausible version of the events merely because the court finds a different version more plausible.")

**B.**     **The Legal Standard for a GBL § 349 Claim**

General Business Law § 349 "prohibits deceptive and misleading business practices and its scope is broad, indeed." *Lonner v. Simon Prop. Grp.*, 57 A.D.3d 100, 109 (2d Dep't 2008). "General Business Law § 349 'on [its] face appl[ies] to virtually all economic activity, and [its] application has been correspondingly broad … The reach of General Business Law § 349 provide[s] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in our State'" *Id.* at 109-10 (quoting *Karlin v. IVF Am.*, 93 N.Y.2d 282, 290 (1999)).

Further, "[i]n determining what types of conduct may be deceptive practices under state law, this Court [New York Court of Appeals] has applied an objective

standard which asks whether the 'representation or omission [was] likely to mislead a reasonable consumer acting reasonably under the circumstances' (*Gaidon v. Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (1999) [internal quotation marks and citations omitted]; *see Oswego Laborers' Local 214 Pension Fund v. Marine Midland Bank*, 85 N.Y.2d 20, 26 (1995)), taking into account not only the impact on the 'average customer' but also on 'the vast multitude which the statutes were enacted to safeguard -- including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions' (*Guggenheimer v. Ginzburg*, 43 N.Y.2d 268, 273 (1977))." *Matter of Food Parade, Inc. v. Office of Consumer Affairs of County of Nassau*, 7 N.Y.3d 568, 575 (2006) (Graffeo dissent).[2] The purpose of Section 349 is to "'empower consumers,' especially 'the disadvantaged' and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses.'" *Watts v. Jackson Hewitt Tax Serv. Inc.*, 579 F. Supp. 2d 334, 346 (E.D.N.Y. 2008) (quoting *Vitolo v. Mentor H/S, Inc.*, 426 F. Supp. 2d 28, 33 (E.D.N.Y. 2006)), *Mendez v. Bank of Am. Home Loans Servicing, LP*, 840 F. Supp. 2d 639, 657 (E.D.N.Y. 2012).

In order to state a claim under GBL § 349 "[a] plaintiff … must prove … that the challenged act or practice was consumer-oriented, … that it [the act or practice] was misleading in a material way, and … that the plaintiff suffered injury as a result of the

---

[2] Defendants describe the "objective test" merely as "'likely to mislead a reasonable consumer acting reasonably under the circumstances,'" Def. Br. at 6, quoting *Stutman v. Chem. Bank*, 95 N.Y.2d 24, 31 (2000), but leave out completely the coda that includes "'the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions.'" *Supra*, quoting *Matter of Food Parade, Inc.*, 7 N.Y.3d at 575 and *Flattau v. John Hancock Mut. Life Ins. Co.*, No. 85 Civ. 5487 (JFK), 1986 U.S. Dist. LEXIS 16537, at *9-*10 (S.D.N.Y. Dec. 12, 1986).

deceptive act." *Stutman*, 95 N.Y.2d at 29. Since defendants in this case concede that the plaintiff's claims are consumer oriented, Def. Br. at 6, the remaining issues are those of materiality and injury.

**C.    Defendants' Imposition of the
18% "Gratuity" was Materially Misleading**

**1.    Defendants' "Disclosure" was not Accurate**

The imposition of an 18% "gratuity" was deceptive because a "gratuity," by definition and by the rules of the United States Internal Revenue Service,[3] is a *voluntary* act. Under IRS Revenue Ruling 2012-18, "[t]he employer's characterization of a payment as a 'tip' is not determinative. For example, an employer may characterize a payment as a tip, when in fact the payment is a service charge." Abrams Decl., Ex. E. The indicia of a "tip" or "gratuity" are: "(1) the payment must be made free from compulsion; (2) the customer must have the unrestricted right to determine the amount; (3) the payment should not be the subject of negotiation or dictated by employer policy; and (4) generally, the customer has the right to determine who receives the payment." *Id.* New York courts have also held that a "tip" or "gratuity" must be voluntary. *Bynog v. Cipriani Grp., Inc.*, 298 A.D.2d 164, 165 (1st Dep't 2002) (a tip is "a voluntary gratuity presented by the customer in recognition of the waiter's service"); *Restaurants & Patisseries Longchamps, Inc. v. Pedrick*, 52 F. Supp. 174, 174-75 (S.D.N.Y. 1943) (a tip is a "'sum of money given, as to a servant, usually to secure better or more prompt service.' This connotes a voluntary act. A patron in a restaurant is under no compulsion to leave a 'tip.'") (citation omitted).

---

[3] IRS Revenue Ruling 2012-18. *See* Abrams Decl., Ex. E.

Thus, the 18% "gratuity" in this case is not a "tip" or a "gratuity"[4] and, therefore, it is materially misleading to label this improper surcharge as a "gratuity."

By long custom and tradition, a gratuity, or "tip," is designed to signal the server as to the quality of his or her service. Presumably, if service is poor, the gratuity would be low or, even, nonexistent, thereby signaling that service must be improved. Conversely, excellent service can be rewarded with a higher gratuity. Nevertheless, no matter what the "standard," any gratuity must be completely voluntary. Thus, the automatic addition of a fixed "gratuity" of 18% in the present case is a contradiction in terms and, therefore, deceptive. It suggests that the extra 18% charge is *both* voluntary (the term "gratuity") and involuntary (it is automatically added to each check without any indication that the charge can be reduced or eliminated).

Confronted with that apparent contradiction, a restaurant patron, in the social setting of a meal out, is not likely to question the policy. Few individuals would consider it appropriate in the restaurant setting to challenge the 18% "gratuity" both because the implication is that the 18% "gratuity" is proper and because virtually no restaurant patron would have a knowledge of New York City consumer laws, such as 6 RCNY § 5-59, forbidding such fixed surcharges.

Defendants argue that the 18% "gratuity" was not materially misleading because it was "conspicuously disclosed." Def. Br. at 6-7. Plaintiff does not disagree that the 18% "gratuity" was conspicuously disclosed. Rather, plaintiff argues that the "disclosure" itself was misleading, as discussed above. An accurate disclosure would have labeled the fixed 18% fee as a "surcharge" within the meaning of 6 RCNY § 5-59(a) rather than as a

---

[4] As discussed below, neither is it a "service charge" within the meaning of 6 RCNY § 5-59(b), but rather an improper "surcharge" within the meaning of 6 RCNY § 5-59(a).

"gratuity." Or, alternatively, the disclosure could have included the fact that consumers had the option to reduce or eliminate the charge. Not having done either, defendants' argument that the disclosure of the 18% "gratuity" was "accurate," Def. Br. at 7, is incorrect.

Defendants' cases in support of its argument that an accurate disclosure is not deceptive are inapposite. In *Derbaremdiker*, Def. Br. at 7, the court held that the terms of a sweepstake were not materially misleading because, when the plaintiff's receipt for his meal at defendant's restaurant was read together with the official rules contained in a hyperlink referenced on the receipt, all of the material terms of the sweepstake were fully disclosed. *Derbaremdiker v. Applebee's Int'l, Inc.*, No. 12-CV-01058 (KAM), 2012 U.S. Dist. LEXIS 138596, at **16-22 (E.D.N.Y. Sept. 26, 2012). By contrast, in this case, the description of an 18% surcharge as a "gratuity" is itself materially misleading, as described above, and nowhere do defendants explain that the 18% fee cannot be considered a "gratuity" but must be considered an improper "surcharge."

In *Michaelson*, Def. Br. at 8, an unpublished California case, the court held that a 16% gratuity charge in the Ritz-Carlton Hotel's room service menu did not violate California's Unfair Competition Law because the charge was disclosed, even though the disclosure was "in very small and nondescript print at the bottom of the page and away from where the layout of the page directs the eye to find the advertised prices." *Michaelson v. The Ritz-Carlton Hotel Co., LLC*, No. G032032, 2004 Cal. App. Unpub. LEXIS 2609, at *2 (Cal. App. 4th Dist. Mar. 22, 2004). By contrast, there is no claim in the present case that the 18% "gratuity" was not disclosed but simply that the disclosure was false and deceptive. In addition, *Michaelson* involves room service at a luxury hotel,

not restaurant dining at a modest restaurant.

**2.    Defendants' "Automatic Gratuities"
       Violate New York City Rules**

Despite defendants' argument that "plaintiff may not use section 349 to circumvent the absence of a private right of action under the regulations at issue," Def. Br. at 16, defendants themselves seek to use the New York City regulations as a shield, arguing that "automatic gratuities are consistent with the New York City Rule (sic)." Def. Br. at 8. If defendants can use the New York City regulations as a shield, plaintiff can certainly use the New York City regulations as a sword.

In fact, defendants' "automatic gratuities" policy violates 6 RCNY § 5-59(a) which forbids the addition of "surcharges to listed prices." Then it gives an example of forbidden surcharges, declaring that "a restaurant may not state at the bottom of its menu that a 10 percent charge or a $1.00 charge will be added to all menu prices." In fact, that is exactly what defendants have done. The only difference is that the surcharge was 18% and it was called a "gratuity."

6 RCNY § 5-59(b) provides an exception for a "bona fide service charge," giving as examples of such permitted service charges "an added charge for two persons splitting one meal, or per person minimum charge." Since defendants' 18% "gratuity" does not fit the definition of a "service charge," it cannot be construed as a bona fide service charge. IRS Revenue Ruling 2012-18 is consistent with 6 RCNY § 5-59(b). In an example, IRS Revenue Ruling 2012-18 held that "an 18% charge … added to all bills for parties of 6 or more customers … is not a tip within the meaning of section 3121 of the Code," since the customer "did not have the unrestricted right to determine the amount of the payment because it was dictated by employer policy" and so the customer "did not make the

payment free from compulsion." Rather, the automatic 18% charge – that was included on a "tip line" on the bill – was a "service charge dictated by [the restaurant]."Thus, the 18% "gratuity" in the present case, when applied to large parties, was materially misleading since it was actually a "service charge."

Defendants attempt to circumvent this problem by citation to two administrative decisions of the New York City DCA that are inapposite. Def. Br. at 9. In *Ten & Eight Gourmet*, the DCA held that a restaurant did not violate 6 RCNY § 5-59(b) where the menu stated that a "15% *service charge* will be added on parties of 5 or more" and that a "15% *service charge* will be added to all parties after 8:30 PM." *Ten & Eight Gourmet*, No. LL 5048585 (N.Y. City Dep't of Consumer Affairs Aug. 10, 2004) (Def. Br., Ex. 1) (emphasis added). Suggesting that words do not matter, defendants interpret *Ten & Eight Gourmet* as holding that the "15% gratuity" was a "bona fide service charge," implying an equivalence – "gratuity" and "service charge" – not found in *Ten & Eight Gourmet.*[5]

In *Caliente Cab*, Def. Br. at 9, the DCA held that the restaurant improperly failed to disclose that a 15% charge would be added to the bill of parties of *6 or more*. *Caliente Cab Restaurant Co.*, No. LL 5106869 (N.Y. City Dep't of Consumer Affairs June 29, 2006) (Def. Br., Ex. 2). In reaching that conclusion the DCA referred to 6 RCNY § 5-59(b) (service charges). Defendants interpret the *Ten & Eight Gourmet* and *Caliente Cab* decision as suggesting that "the DCA understands an automatic gratuity to be a 'bona fide service charge' that may be charged to consumers without limitations so long as it is sufficiently disclosed." Def. Br. at 9. That is not correct. *Ten & Eight Gourmet* set out the

---

[5] Defendants also fail to point out that in *Ten & Eight Gourmet* the phrase "A 15% Tip Is Suggested" was printed on all customer receipts. Thus, unlike the present case, the "tip" was properly voluntary.

DCA policy clearly: a disclosed *service charge* for parties of 5 (presumably, "or more") and for all parties after 8:30 PM is proper under 6 RCNY § 5-59(b). That is because larger parties require additional *service* – more waiters at one time, additional stress on the kitchen staff to get multiple meals out at one time, etc. Similarly, after 8:30 PM any restaurant is likely to have fewer customers and yet still require a full staff. In *Caliente Cab* the respondent restaurant was "charged with violating Title 6 of the Rules of the City of New York Section 5-59 by failing to conspicuously disclose to consumers that a 15% *service charge* will be added to the bill for parties of 6 or more." Def. Br., Ex. 2 (emphasis added). The only mention of the word "tip" was by the restaurant manager who characterized the 15% service charge as a "tip." Respondent was found "guilty" of failing to disclose the 15% service charge. Taken together, *Ten & Eight Gourmet* and *Caliente Cab* hold only that a disclosed service charge for large parties is proper under 6 RCNY § 5-59(b). They do not say that a gratuity is simply a service charge as defendants argue.

### D.    Plaintiff Adequately Pleads a Cognizable Injury Related to the Gratuity and the No Price Beverage Policy

Plaintiff alleged that "[a]s a result of Defendants' violations of 6 RCNY § 5-59, NYCAC § 20-700, et seq., and GBL § 349, plaintiff and the Class *overpaid substantially for their meals* at Defendants' restaurants." FAC ¶ 4 (emphasis added). Based on that allegation, plaintiff demanded that he and members of the Class be "reimbursed for the unlawful gratuity charged by the Restaurants during the Class Period." FAC ¶ 29. Plaintiff also alleged that by failing to list prices for certain beverages, defendants could charge any price they wanted for those drinks, whether or not those prices were reasonable. FAC ¶ 32. Based on that allegation, plaintiff demanded that he and members

of the Class be "reimbursed for the price charged for any items for which no price was listed on the menus at the Restaurants during the Class Period." FAC ¶ 35. Based on those allegations and demands, it is clear that plaintiff has satisfactorily alleged cognizable injury under GBL § 349. *Wilner v. Allstate Ins. Co.*, 71 A.D.3d 155, 167 (2d Dep't 2010) ("The plaintiffs alleged that they were forced to pay for an attorney, and thus adequately pleaded damages under General Business Law § 349."); *Lonner*, 57 A.D.3d at 111 (allegations that plaintiff was injured by defendant's conduct, along with proper allegations of deceptive, consumer oriented practice, "sufficient to state a cause of action under General Business Law § 349.").

In regard to the "gratuity," the argument for injury and damages is that the entire charge was improper and that, therefore, it should be returned to plaintiff and the class. In regard to the failure to post prices for certain beverages, the injury and damages should be the difference between the price of the drinks and a reasonable price.

Defendants argue that "any consumer who declines to pay the 18% gratuity is not required to do so." Def. Br. at 10. That argument is irrelevant in a GBL § 349 claim and particularly irrelevant in a restaurant setting where there is no indication that an 18% mandatory charge improperly labeled a "gratuity" can be the subject of negotiation.

Defendants also pretend that plaintiff must "state what gratuity he – or other purported class members – would have paid in place of the 18% before-tax calculation." Def. Br. at 10.  Aside from the fact that even if such a calculation were required in a GBL § 349 claim, which it is not, it would not be required at the present stage and the present motion. *Twombly*, 550 U.S. at 555, ("[D]etailed factual allegations are not required" on a motion to dismiss.); *Ashcroft*, 556 U.S. at 663.

Defendants' citation to *Sarmiento* [sic] *v. World Yacht, Inc.*, No. 117224/05, 2006 N.Y. Misc. LEXIS 2419 (Sup. Ct., N.Y. Co. Aug. 10, 2006), is inapposite since plaintiff does not argue that "certain patrons would otherwise have paid a lower gratuity and therefore suffered damages …." Def. Br. at 10. Plaintiff and the class paid *no gratuity* since defendants' mandatory "gratuity" was an improper surcharge that should not have been paid. Under these circumstances, speculation as to what any customer would have paid as a tip or gratuity is completely irrelevant.[6]

Defendants' citation to *Small v. Lorillard Tobacco Co.,* 94 N.Y.2d 43 (1999) is also inapposite since plaintiff makes no argument that he "would not have dined at the [defendants'] restaurants had he known of the purported deceptive practice[s]." Def. Br. at 11. Nor is it necessary to make such an argument in this case since fraud and reliance are not elements of a GBL § 349 claim. *Oswego Laborers' Local 214 Pension Fund,* 85 N.Y.2d at 26.[7]

---

[6] *Samiento v. World Yacht Inc.*, 10 N.Y.3d 70 (2008), is also inapposite because it involves cruises including meals and catering to particular groups of people who make advance reservations that include fully disclosed "service charges." These cruises are "private events which involve either individual or corporate patrons that have contracted with defendants to charter an entire vessel for celebratory, ceremonial, charitable or corporate purposes" or "general public dining cruises." *Samiento*, 10 N.Y.3d at 75. The restaurant setting in the present case is completely different. In addition, *Samiento* involves a particular statute, Labor Law § 196-d, that deals with the issue of passing on tips or service charges to employees, not whether the service charges to customers in a single restaurant are legitimate, as in the present case. Finally, the claims in *Samiento* were brought by the wait staff (the "servers"), not the customers. The court granted plaintiffs' Labor Law § 196-d claims, and dismissed their GBL § 349 claims to which the court gave short shrift. *Samiento*, 10 N.Y.3d at 81 ("Since plaintiffs here cannot show how World Yacht's customers suffered a detriment by *agreeing to pay the service charges*, the automatic gratuities, or the added gratuities, plaintiffs failed to establish a prima facie claim under General Business Law § 349 ….") (Emphasis added).

[7] The *Small* plaintiffs essentially made a fraud claim purporting to be a GBL § 349 claim. *Small*, 94 N.Y.2d at 56 ("Plaintiffs add that had they known that nicotine was addictive, they never would have purchased cigarettes.").

### E.    The Omission of Prices for Beverages is Materially Misleading [8]

The omission of prices for beverages is likely to mislead not only a "reasonable consumer" but also "the vast multitude which the statutes were enacted to safeguard -- including the ignorant, the unthinking and the credulous who, in making purchases, do not stop to analyze but are governed by appearances and general impressions." *Matter of Food Parade, Inc.*, 7 N.Y.3d at 575. In the present case, in the context of a restaurant meal, the failure to list prices is deceptive because it provides no clue as to the price that will be charged.[9] Nor should restaurant patrons be tasked with the obligation to inquire about price of approximately 50 beverages before a meal, particularly since the social setting of eating out militates against such questioning. At the same time, the failure to list prices allows the restaurant to charge whatever price it chooses. This need not be an exorbitant price that would catch the attention of a patron, but it may be just enough above a reasonable price to provide an unusual profit without eliciting any resistance.[10]

Defendants' *DineEquity* citation, Def. Br. at 12, is inapposite since New Jersey state law governing the case specifically excluded omissions. *Watkins v. DineEquity, Inc.*, C.A. No. 11-7182 (JBS/AMD), 2012 U.S. Dist. LEXIS 122677, at *21-22 (D.N.J. Aug. 28, 2012) ("In drafting the NJTCCWNA, the legislature targeted *written* documents presented by sellers to consumers or potential consumers and sought to protect consumers who might read an illegal provision, be deceived by the provision, and then fail to enforce their rights.") (Emphasis added).

---

[8] Plaintiff did purchase a beverage whose price was not listed on the menu. Abrams Decl., Ex. D.

[9] It is difficult to imagine a non-deceptive reason for failing to list beverage prices.

[10] In the present case, plaintiff paid $3.09 for a Coke whose price was not listed on the menu. Such a price was approximately $1.50 above a standard price for a Coke as discovery will show.

In *Dugan v. TGI Friday's, Inc.*, No. A-3098-10T2, 2011 N.J. Super. Unpub. LEXIS 2649 (App. Div. Oct. 25, 2011), by contrast, a New Jersey appellate court denied defendant's motion to dismiss a claim of price omission brought under the New Jersey Consumer Fraud Act ("CFA").[11] In *Dugan*, plaintiff alleged that defendant failed to list the price of beer on its menus and then charged a higher price for that beer purchased at a table than at the bar. Plaintiff referred to this practice as a "stealth price adjustment," *id.* at *17, and upheld the lower court's denial of defendant's motion to dismiss. Moreover, the *Dugan* court held that plaintiff had successfully alleged an "ascertainable loss," *Dugan* at *17, agreeing that plaintiff "had a legitimate expectation of an objectively reasonable price, and the difference between what she [plaintiff] paid and such a reasonable price constitutes an ascertainable loss." *Dugan*, at *18. Moreover, "Dugan would logically have lost the benefit of a $2.00 beer and paid $1.59 more for the privilege of moving from the bar to a nearby table. This is an objective out-of-pocket loss." *Id.* In the present case, plaintiff's out-of-pocket loss is the difference between what he paid for his Coke and an "objectively reasonable price."

Similarly, another New Jersey court denied defendant's motion to dismiss where plaintiff alleged that the price for beverages that he ordered and consumed was not listed on the menu and was unreasonably high. *Pauly v. Houlihan's Restaurants, Inc.*, C.A. No. 12-0025 (JBS/JS), 2012 U.S. Dist. LEXIS 180215 (D.N.J. Dec. 20, 2012). The court based its holding on a contract theory: "Based on the allegations of the complaint, there are sufficient grounds to find that a valid contract was formed between Defendant and Mr. Pauly when Mr. Pauly ordered beverages offered on its menu." *Pauly*, at *15. Such a

---

[11] Like New York's GBL § 349, the CFA forbids, *inter alia*, "deception" and any "unconscionable commercial practice." *Dugan*, at *7.

16

contract for sale "can be concluded even though the price is not settled and in such a case, the price is deemed to be the *reasonable price of the product at the time of delivery.*" *Id.* at *16 (emphasis added).

Further, "[w]hile the Plaintiff has not alleged specifically what price he paid for the drinks versus what a reasonable good faith price for the drinks would be, the Plaintiff has alleged sufficient facts to put Defendant Houlihan's on notice about the grounds for his claim. That is sufficient to satisfy Rule 8 and presents a plausible basis for relief." *Pauly*, at *17. [12]

As in *Dugan* and *Pauly*, plaintiff's cognizable injury in the present case is the difference between what he was charged for the beverage and a reasonable charge for that beverage. The extent of that difference, however, will be considered at a later stage of the litigation, not on a motion to dismiss.

Defendants argue that New York law does not require restaurants to post drink prices, Def. Br. at 13, citing Chapter 700 of the Suffolk County, New York law, Code of Laws. Under New York law, however, "an omission can be actionable under Section 349." *Dupler v. Costco Wholesale Corp.*, 249 F.R.D. 29, 43 (E.D.N.Y. 2008).[13]

In fact, Chapter 700 supports plaintiff's claim. The "legislative intent" of Chapter 700 is as follows:

A. This Legislature hereby finds and determines that the key to effective consumer protection is ensuring consumers have access to all information necessary to

---

[12] Defendants' argument that "plaintiff fails to plead a cognizable injury related to the beverage claim," Def. Br. at 14, therefore, is incorrect.

[13] *See also State of Arizona v. Autozone, Inc.*, 258 P.3d 289, 300 (Ariz. Ct. App. 2011), *vacated on other grounds*, 275 P.3d 1278 (Ariz. 2012) ("Offering goods for sale without a price has a 'tendency and capacity,' (citation omitted), to convey misleading impressions to consumers because, for example, they may incorrectly assume another good's price applies to the good with no price.").

make informed decisions.

     B. This Legislature further determines that consumers have an *absolute right to know the price of goods and services offered for sale by businesses operating in Suffolk County.*

     C. This Legislature also finds that certain restaurants in Suffolk County do not recognize this "right to know" when it comes to their policy for so-called "*daily specials.*" Restaurants offer their patrons "specials" which do not appear on their regular menu but, in many cases, fail to voluntarily apprise their customers how much these specials cost.

     D. This Legislature further finds that all too often consumers learn when their bill arrives that the special they ordered *costs far more than they anticipated.*

     E. Therefore, the purpose of this article is to require all restaurants in Suffolk County to give their patrons *adequate notice of the prices of all food items offered for sale, including those items known as "daily specials.*" (Emphasis added).

Thus, the Suffolk County law indicated broad support for customers to know the price of "goods and services" in Suffolk, (just as GBL § 349 provides broad protection for all New Yorker consumers) even while focused on "daily specials."

Defendants also incorrectly argue that Section 20-700 of the NYCAC does not provide support for plaintiff's claim. In fact, the language of 20-700 is virtually identical to that of GBL § 349, forbidding "deceptive or unconscionable trade practice in the sale … of any consumer goods …." Moreover, plaintiff provided evidence that 20-700 is applicable to the issue of failure to post prices on a restaurant menu by citing two occasions on which DCA inspectors issued Notices of Violation to defendants' restaurants for failure to list beverage prices in violation of 20-700. FAC ¶¶ 22-23. Regardless of defendants' claim that the inspectors involved were "overreaching" when they issued these Notices, Def. Br. at 14, n. 6, such evidence is sufficient to support a claim on a motion to dismiss that the omission of beverage prices from a restaurant menu violates 20-700.[14]

---

[14] Defendants' citation to 20-708.1.3(c) is inapposite because 20-708.1 expressly deals with the issue of "item pricing" involving a "tag, stamp or mark affixed to a stock keeping item which sets forth, in arabic numerals, the retail price thereof." 20-708.1.4. Restaurants are excluded simply because they are "inappropriate for item pricing." 20-708.1.3(c).

**F.      Plaintiff Has Standing to Bring the No Price Claim**

Defendants argue that plaintiff does not have standing to bring a claim based on defendants' failure to list prices for beverages since plaintiff has not alleged that he purchased a beverage whose price was not listed on the menu. Def. Br. at 15. In fact, however, plaintiff did purchase an item – a Coke – whose price was not listed on the menu. Abrams Decl., Ex. D.

**G.      Plaintiff's GBL § 349 Claim Can Stand By Itself**

Defendants' argue that plaintiff has used GBL § 349 to "circumvent the absence of a private right of action under the regulations at issue [6 RCNY § 5-59, or NYCAC § 20-700]." Def. Br. at 16. Defendants are incorrect. Plaintiff does not dispute that there is no private right of action under either 6 RCNY § 5-59, or NYCAC § 20-700 and defendants concede that plaintiff never made such a claim. Def. Br. at 18. Rather, plaintiff argues that the GBL § 349 claim can stand alone on the grounds that the mandatory 18% "gratuity" (which is not a gratuity under either the IRS definition or New York case law) is deceptive for the reasons discussed above that have nothing to do with 6 RCNY § 5-59, *supra* at II (C)(1); and that the failure to list beverage prices is also deceptive, as discussed above, *supra* at II (E), without reference to NYCAC § 20-700.

**H.      Plaintiff's GBL § 349 Claim is Not
           Preempted by 6 RCNY § 5-59 and NYCAC § 20-700**

6 RCNY § 5-59 and NYCAC § 20-700, as well as the evidence of three DCA Notices of Violation, FAC ¶¶ 21-23, properly support the GBL § 349 claims and do not preempt them.

New York case law supports the consideration of statutes or regulations for which there is no private right of action as evidence of a GBL § 349 claim. In *Llanos v. Shell*

*Oil Co.*, 55 A.D.3d 796 (2d Dep't 2008), the court reversed a lower court order that had dismissed the complaint on the grounds that the GBL § 349 claim was preempted by GBL § 396-i. *Llanos* involved the imposition of a dormancy fee on gift cards that reduced the gift card balance to zero if it was not used within a certain time period. *Id.* at 797. The plaintiff had alleged that the cards were "deceptively marketed and fail[ed] to adequately disclose the existence of the dormancy fee." *Id.*

GBL § 396-i required that the terms and conditions of gift cards "'shall be clearly and conspicuously stated thereon,' including 'whether any fees are assessed against the balance of the gift certificate.'" *Llanos*, at 797, quoting GBL § 396-i. Since the plaintiff did not plead a private right of action under GBL § 396-i, the court did not have to determine whether such a private right existed. In permitting the plaintiff's GBL § 349 claim to proceed, the *Llanos* court concluded that "nothing in the clear import of the language of General Business Law § 396-i requires a conclusion that the Legislature intended to abrogate any common-law remedy arising from alleged deceptive or improper practices concerning gift certificates or cards." *Llanos*, at 798. Nor did the "exclusivity provision" of GBL § 396-i preempt any other "local legislation concerning gift certificates or cards [unless such legislation is] inconsistent with or more restrictive than that set forth in the section…." *Id.* Similarly, in the present case, GBL § 349 is neither inconsistent with nor more restrictive than 6 RCNY § 5-59 or NYCAC § 20-700. Finally, the *Llanos* court held that "in general, a General Business Law § 349 cause of action may be maintained as to 'all deceptive acts or practices declared to be unlawful, whether or not subject to any other law of this state.'" *Id.* at 799, quoting General Business Law § 349 [g] and citing *Farino v. Jiffy Lube Int'l*, 298 A.D.2d 553 (2d Dep't

20

2002); *Walts v. First Union Mortg. Corp.*, 259 A.D.2d 322, 323 (1st Dep't 1999)). *See also Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d 39, 42, 50 (2d Dep't 1999) (GBL § 349 violation when bank "unilateral[ly] impos[ed] illegal and/or unwarranted fees upon its customers" and where defendants' unwarranted fax fee violated Real Property Law § 274-a which obligates mortgagees to provide payoff statements at no charge to residential homeowners.).[15]

In *Lonner*, 57 A.D.3d 100, another gift card case where violation of § GBL 396-i was also alleged, the court held that the plaintiff "adequately states a cause of action to recover damages for violation of General Business Law § 349, since it [the amended complaint] alleges that the inadequate font size in which the dormancy provision was printed, and the defendant's concomitant failure to conspicuously disclose that provision, constituted a deceptive business practice," *id.* at 110-11, and thus that GBL § 349 was not preempted by GBL § 396-i. The present case also adequately states a cause of action under GBL § 349 by alleging that the 18% "gratuity" and the failure to list certain beverage prices were deceptive acts.

Defendants' citations to *Conboy* and *Broder* are inapposite. Def. Br. at 18-21. In *Conboy v. AT&T Corp.*, 241 F.3d 242 (2d Cir. 2001), the plaintiff alleged, *inter alia*, that defendants – a long-distance service provider and its once-affiliated credit card company – had violated both GBL § 349 and GBL § 601 by calling him regarding his credit card

---

[15] *See also Riordan v. Nationwide Mutual Fire Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990). ("[A] policy and practice of violating New York Insurance Law § 2601 and the rules promulgated thereunder, as alleged by plaintiffs, if proven, constitutes a "deceptive business practice" sufficient to satisfy the requirements of Section 349. Plaintiffs' Section 349 claim is in no way undermined by their assertion that Nationwide claim settlement practice is violative of, and directly treated by, New York Insurance Law § 2601, under which there is no private cause of action.")

bill. GBL § 601 "prohibits a creditor from communicating with the 'debtor or any member of his family or household with such frequency or at such unusual hours or in such a manner as can reasonably be expected to abuse or harass the debtor.'" *Conboy*, at 257-58, quoting GBL § 601(6). There is no private right of action under GBL § 601. The *Conboy* court dismissed plaintiff's GBL § 349 because "[p]laintiffs … have failed to indicate how UCS's [one of the defendants] conduct was 'deceptive' in any material way. Plaintiffs have not alleged any facts to suggest that UCS misled them; they also have not identified any statement made during any of UCS's telephone calls that was false or deceptive. As the District Court noted, 'there is no indication that the telephone calls were for any purpose other than for what they purported to be.'" *Conboy*, at 258.

Thus, unlike the present case, the plaintiffs were alleging a GBL § 349 claim with no factual allegations of deception as required by GBL § 349. Under such circumstances, they could not make a GBL § 349 regardless of what GBL § 601 forbid. In all of the New York cases cited above involving underlying statutes or regulations with no private right of action, however, GBL § 349 claims have been allowed only where there were adequate factual allegations of deceptive practices, like the present case and unlike *Conboy*.

Similarly, the plaintiff in *Broder* "d[id] not make a free-standing claim of deceptiveness under GBL § 349 that happens to overlap with a possible claim under PSL [New York Public Service Law] § 224-a(4)." *Broder v. Cablevision Sys. Corp.*, 418 F.3d 187, 200 (2d Cir. 2005).[16] In *Broder*, plaintiff alleged that defendants had violated a

---

[16] The *Broder* court explained that a claim for misleading brochures might have satisfied a common law fraud claim (and then, perhaps, a GBL § 349 claim), but since Broder had not made that argument until his appellate reply brief, the court did not consider it. *Id.* at 202 ("It is too late in the day for him [Broder] to shift his focus to the purportedly misleading nature of Cablevision's brochures considered independently of PSL § 224-a(4).").

22

federal law regarding uniform cablevision rates, 47 U.S.C. § 543(d), and the disclosure requirements under N.Y. Pub. Serv. Law § 224-a(4). Neither the federal nor the state statute allowed a private right of action. The particular factual allegation was that defendants had offered a reduced rate for the Winter season to certain customers without offering or disclosing the reduced rate to other customers. The problem for Broder's allegation, unlike the present case but like *Conboy*, was that he failed to allege a claim of deceptiveness independent of the federal and state statutes involved.

## I.   Plaintiff's GBL § 349 Claims May Rest on Violations of 6 RCNY § 5-59 and NYCAC § 20-700

Under New York law, violations of GBL § 349 may be premised on violations of other statutes or regulation. For example, in *Cohen v. J.P. Morgan Chase & Co.*, 608 F. Supp. 2d 330, 350 (E.D.N.Y. 2009) the court held that a post-closing fee in a real estate transaction that violated the Real Estate Settlement Procedures Act of 1974 ("RESPA"), 12 U.S.C. § 2607(b) "could constitute a deceptive practice even if disclosed." *Id.* at 350, (citing an earlier decision by the Second Circuit *Cohen v. JP Morgan Chase & Co.*, 498 F.3d 111, 126-27 (2d Cir. 2007) ("*Cohen I*")). The *Cohen* court held that "given a consumer's reasonable assumption that all fees charged by a respectable bank are legal, collecting fees in violation of state and federal laws may satisfy the 'misleading' element of § 349." *Cohen*, 608 F. Supp. 2d at 350 (citing *Cohen I*). The *Cohen* court then cited a series of New York cases supporting the proposition that "collecting an illegal fee constitutes a deceptive conduct under § 349":

> See *Kidd v. Delta Funding Corp.*, 2000 N.Y. Misc. LEXIS 29, at *26-27 (Sup. Ct., N.Y. County, Feb. 22, 2000)  (holding that although defendant disclosed the challenged fee, defendant's imposition of illegal fees constituted deceptive conduct under § 349); *Negrin v. Norwest Mortg., Inc.*, 263 A.D.2d 39, 50 (2d Dep't 1999) (notwithstanding disclosure, allegations of a bank's imposition of illegal and/or unwarranted fees stated

> a valid claim under § 349); *Dowd v. Alliance Mtge. Co.*, 32 A.D.3d 894, 895 (2d Dep't 2006) (reaffirming *Negrin*); *Bartolomeo v. Runco*, 162 Misc. 2d 485, 490 (Yonkers City Ct. 1994) (representation that a cellar apartment was a legal apartment was deceptive under § 349) (*overruled on other grounds by Corbin v. Briley*, 192 Misc. 2d 503 (2d Dep't 2002)).

*Cohen*, 608 F. Supp. 2d at 350.

The *Cohen* court then concluded that "[i]f it is found that collection of the post-closing fee was in fact illegal under RESPA,[17] then first element of § 349 is established." *Id.*

Under the cases cited above, plaintiff may allege a violation of GBL § 349 based upon a violation of 6 RCNY § 5-59 and NYCAC § 20-700. Defendants violated 6 RCNY § 5-59 by imposing an illegal surcharge and violated NYCAC § 20-700 by failing to list prices for certain beverages.

## III.   CONCLUSION

For the reasons discussed above, Plaintiff respectfully asks this Court to deny Defendants' motion to dismiss the Fourth Amended Complaint. Should this Court deem it necessary, Plaintiff respectfully requests an opportunity to amend the FAC as required.

---

[17] *Cohen* was at the summary judgment stage.

24

Dated: March 10, 2014
New York, New York

/s/ Jeffrey G. Smith
Jeffrey G. Smith, Esq.
Robert Abrams, Esq.
WOLF HALDENSTEIN ADLER
   FREEMAN & HERZ LLP
270 Madison Avenue
New York, NY 10016
Tel: 212.545.4600
smith@whafh.com


Evan Spencer, Esq.
Evan Spencer, Attorney at Law
305 Broadway, 14th Floor
New York, NY 10007
Tel: 347.931.1814
EvanSpencerEsq@aol.com


Pablo Bustos, Esq.
Bustos and Associates
225 Broadway, 39th Floor
New York, NY 10007
Tel: 212.796.6256


*Attorneys for Plaintiff*