UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

```
USDC SDNY
DOCUMENT
ELECTRONICALLY FILED
DOC #: _____
DATE FILED:   July 9, 2014
```

------------------------------------------------------------X
                                                            :
TED DIMOND, individually and on behalf of all :
others similarly situated,                                  :
                                                            :
                                      Plaintiff,            :        13 Civ. 5244 (KPF)
                                                            :
                       v.                                   :        OPINION AND ORDER
                                                            :
DARDEN RESTAURANTS, INC., *et al.*,                         :
                                                            :
                                      Defendants.           :
                                                            :
------------------------------------------------------------X

KATHERINE POLK FAILLA, District Judge:

        Plaintiff Ted Dimond brings this class action individually and on behalf of

all others similarly situated, alleging that certain of Defendants' restaurants

have violated two New York City rules and regulations, as well as Section 349

of New York State's General Business Law, by imposing an 18% gratuity on

customers' bills and by failing to list the purchase price of certain beverages on

the restaurants' menus.  Defendants have moved to dismiss Plaintiff's Fourth

Amended Complaint ("FAC"), claiming that it fails to state a claim of relief and

that Plaintiff lacks standing to pursue one of his claims.  Because Plaintiff fails

to state a claim as to Defendants' 18% gratuity charge, the Court dismisses

Count I of the FAC.  Similarly, because Plaintiff lacks standing to pursue a

cause of action regarding Defendants' unlisted beverage prices, and because he

fails to state a claim upon which relief can be granted in any event, the Court

dismisses Count II of the FAC.

**BACKGROUND**[1]

**A.    Defendants' Restaurants and Menus**

Defendants Darden Restaurants, Inc., GMRI, Inc., d/b/a Olive Garden and Red Lobster, and Darden Concepts, Inc. (collectively, "Defendants")[2] operate several restaurants, including Olive Garden and Red Lobster restaurants, in Manhattan (the "Restaurants").  (*See* FAC ¶ 16).  The menus at many of the Restaurants state that "[a]n 18% gratuity will be added to all guest checks."  (*See id.* at ¶ 17).  To that end, when a bill is presented to customers at these restaurants, the 18% gratuity is automatically added and calculated on a pre-tax basis.  (*See id.* at ¶ 18).  Customers are also provided with the opportunity to leave an additional tip.  (*See id.*).

At the Restaurants, certain beverage prices, such as beer and non-alcoholic beverages, are not listed on the menu.  (*See* FAC ¶ 20).

**B.    Plaintiff's Allegations**

Plaintiff Ted Dimond is a resident of the City and County of New York and a previous customer at several of Defendants' restaurants.  (FAC ¶ 7).  As a customer of some of Defendants' restaurants, Plaintiff paid the 18% gratuity, and was not asked whether that gratuity was satisfactory or whether he wanted to pay a lesser gratuity.  (*Id.* at ¶ 19).  Although the FAC is silent as to

---

[1]    The facts contained in this Opinion are drawn from the FAC, the Declaration of Robert Abrams ("Abrams Decl."), and the exhibits attached thereto.

For convenience, Defendants' supporting memorandum is referred to as "Def. Br.";   Plaintiff's opposition as "Pl. Opp."; and Defendants' reply memorandum as "Def. Reply."

[2]    Defendants indicate that Darden Restaurants, Inc. and Darden Concepts, Inc. are both improperly named because Darden Restaurants, Inc. is a holding company and Darden Concepts, Inc. does not own or operate any of the restaurants.  (Def. Br. 1).  In light of the Court's disposition of this matter, the Court need not address this issue.

2

whether Plaintiff purchased a beverage at Defendants' restaurants, in opposing Defendants' motion to dismiss, Plaintiff submitted a receipt that he received after a meal at Red Lobster on June 5, 2013, which receipt purports to show that Plaintiff purchased a Coke for which he paid $3.09.  (Abrams Decl. ¶ 5 & Ex. D).

Plaintiff has styled this lawsuit as a class action on behalf of himself and all other persons similarly situated (the "Class") who (i) have been customers of Defendants; (ii) paid their restaurant bills with credit cards, charge cards, or debit cards at Defendants' restaurants in New York City from June 27, 2010, to the present; (iii) were charged an automatic, non-discretionary gratuity based on a percentage of the cost of a meal; (iv) were presented with menus that offered beverages whose prices were not indicated; and (v) suffered damages as a result of Defendants' violations of the consumer protection laws of the State and City of New York.  (FAC ¶ 1).

Plaintiff alleges that Defendants' conduct in (i) charging customers the 18% gratuity on all purchases and (ii) failing to disclose the prices of certain of the Restaurants' beverages on the menus, violated Section 5-59 of Title 6 of the Rules of the City of New York ("RCNY § 5-59"), and Section 20-700 of New York City's Consumer Protection Law, N.Y. Admin. Code, tit. 20, Ch. 5, §§ 20-700- 20-706 ("NYCAC § 20-700").  (FAC ¶ 2).  With respect to Defendants' alleged violation of RCNY § 5-59, Plaintiff claims that Defendants' automatic addition of a gratuity violated § 5-59, and that Defendants' gratuity charge does not fall within the exception set out in § 5-59(b) because there is no additional "service"

provided by the Restaurants for which they may be lawfully compensated.  (*Id.* at ¶ 26).  With respect to the undisclosed beverage prices, Plaintiff alleges that

> By failing to list prices for beers and non-alcoholic beverages on their menus, the Restaurants have violated [NYCAC § 20-700] since the absence of these prices has the capacity, tendency and effect of misleading customers into believing that prices for the drinks and the beers on the menu are the same when in reality [the restaurant] can charge any price for any item.

(*Id.* at ¶ 32 (internal quotation marks omitted)).

Plaintiff further alleges that "[a]s a result of [Defendants'] violation of § 5-59 and § 20-700, Defendants violated New York General Business Law ('GBL') § 349."  (FAC ¶ 3).  As ostensible support, Plaintiff notes that on December 14, 2009, the Olive Garden restaurant located on the Avenue of Americas in New York City was issued a violation by the Department of Consumer Affairs ("DCA") pursuant to RCNY § 5-59 for "Gratuity Added Without Permission," and that on January 23, 2008, and April 29, 2010, the Red Lobster restaurant located in Times Square was twice issued a Notice of Violation for "listing of drinks without prices" in violation of NYCAC § 20-700.  (*See id.* at ¶¶ 21-23).

As for damages, Plaintiff demands that he and the Class members be reimbursed for the gratuity charged and for the price charged for any items for which no price was listed on the menus.  (FAC ¶¶ 29, 35).

## C.  The Procedural History

The procedural history of this action is more extensive than typical for a case at this procedural juncture, due to the numerous amended complaints that have been filed.  To start, on June 27, 2013, Plaintiff commenced this class action in the Supreme Court of the State of New York, County of New

York, against multiple restaurants and restaurant owners operating in New York City, including those restaurants named here and others not named. (Dkt. #1-1).  On July 16, 2013, less than one month later, Plaintiff filed an amended complaint in the same court that named additional defendants and included additional causes of action.  (Dkt. #1-2).

On July 26, 2013, DineEquity, Inc., a defendant named in the amended state court complaint, removed the action to this Court by filing a Notice of Removal (the "Notice").  (Dkt. #1).  DineEquity alleged that this Court had subject matter jurisdiction over the class action pursuant to the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. §§ 1332(d), 1453, 1711-1715.  (Notice ¶ 6).  Between August 23, 2013, and September 5, 2013, Plaintiff voluntarily dismissed a number of defendants who were named in the amended state court complaint.  (*See, e.g.,* Dkt. #12, 17, 24).  During that same time, on September 3, 2013, Plaintiff filed a motion for leave to amend the state court complaint. (Dkt. #22).  Then, on September 26, 2013, Plaintiff requested permission to withdraw the motion in order to re-file that motion at a time agreed to by the parties. (Dkt. #29).  The Court granted Plaintiff's request to withdraw his September 3 motion for leave to amend, but ordered that instead of re-filing that motion, in accordance with Federal Rule of Civil Procedure 15(a)(1), Plaintiff should file and serve a second amended complaint by October 14, 2013.  (*Id.*).

Plaintiff filed his second amended complaint on October 15, 2013.  (Dkt. #30).  On October 21, 2013, Defendants filed a letter requesting a pre-motion

conference on their anticipated motion to dismiss the Second Amended
Complaint.  (Dkt. #31).  In response, Plaintiff requested leave to file a third
amended complaint, citing information received after the filing of the Second
Amended Complaint; Defendants consented to this request.  (Dkt. #34, 35).
The Court granted Plaintiff's request on October 24, 2013, and ordered that
Plaintiff file his third amended complaint by November 8, 2013.  (Dkt. #36).

Plaintiff filed his Third Amended Complaint on November 4, 2013.  (Dkt.
#41).  Shortly thereafter, on November 12, 2013, Plaintiff requested permission
to withdraw the Third Amended Complaint due to information obtained after
filing that complaint.  (Dkt. #48).  Plaintiff asked that the operative complaint
be the previously filed Second Amended Complaint, or that Plaintiff be
permitted to file a fourth amended complaint.  (*Id.*).  On November 13, 2013,
Defendants again consented to Plaintiff's request in order to minimize motion
practice and to conserve judicial resources.  (Dkt. #46).  On November 14,
2013, the Court granted Plaintiff's request, allowing Plaintiff to withdraw his
Third Amended Complaint, and ordering that if no fourth amended complaint
were filed by November 22, 2013, then the Second Amended Complaint would
become the operative complaint in this action.  (Dkt. #50).

Plaintiff filed the FAC on November 22, 2013.  (Dkt. #54).[3]  It asserts two
causes of action: Count I claims violations of RCNY § 5-59 and GBL § 349
stemming from Defendants' charging customers an 18% gratuity; and Count II

---

[3]     Unlike the Second and Third Amended Complaints, which listed multiple plaintiffs, the
FAC listed Plaintiff Dimond only, individually and on behalf of all others similarly
situated.  (*Compare* Dkt. #30, 41, *with* Dkt. #54).

claims violations of NYCAC § 20-700 and GBL § 349 stemming from Defendants' not listing prices for certain beverages on their menus.

On December 16, 2013, Defendants submitted a letter requesting a pre-motion conference on their anticipated motion to dismiss the FAC.  (Dkt. #55). Plaintiff responded to Defendants' request on December 20, 2013 (Dkt. #56), and the Court held a pre-motion conference on January 6, 2014, during which time the Court entered a scheduling order for Defendants' anticipated motion to dismiss (Dkt. #57).

In accordance with the scheduling order, Defendants filed their motion to dismiss on February 11, 2014 (Dkt. # 61), Plaintiff filed his opposition on March 10, 2014 (Dkt. #63), and the motion was fully submitted when Defendants filed their reply on March 25, 2014 (Dkt. #65).

## DISCUSSION

A.     **Applicable Law**

1.     **Motions Under Federal Rule of Civil Procedure 12(b)(6)**

When considering a motion to dismiss under Federal Rule of Civil Procedure 12(b)(6), a court should "draw all reasonable inferences in Plaintiff['s] favor, assume all well-pleaded factual allegations to be true, and determine whether they plausibly give rise to an entitlement to relief."  *Faber* v. *Metro. Life Ins. Co.*, 648 F.3d 98, 104 (2d Cir. 2011) (internal quotation marks omitted); *see also Ashcroft* v. *Iqbal*, 556 U.S. 662, 678 (2009) ("To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." (internal quotation marks

7

omitted)).  A plaintiff is entitled to relief if he alleges "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp.* v. *Twombly*, 550 U.S. 544, 570 (2007); *see also In re Elevator Antitrust Litig.*, 502 F.3d 47, 50 (2d Cir. 2007) ("While *Twombly* does not require heightened fact pleading of specifics, it does require enough facts to nudge plaintiff's claims across the line from conceivable to plausible." (internal quotation marks omitted) (citing *Twombly*, 550 U.S. at 570)).  A court is not, however, bound to accept "conclusory allegations or legal conclusions masquerading as factual conclusions." *Rolon* v. *Henneman*, 517 F.3d 140, 149 (2d Cir. 2008); *see also Harris* v. *Mills*, 572 F.3d 66, 72 (2d Cir. 2009) ("[A]lthough a court must accept as true all of the allegations contained in a complaint, that tenet is inapplicable to legal conclusions, and threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." (internal quotation marks omitted) (quoting *Iqbal*, 556 U.S. at 678)).

"In considering a motion to dismiss for failure to state a claim pursuant to Rule 12(b)(6), a district court may consider the facts alleged in the complaint, documents attached to the complaint as exhibits, and documents incorporated by reference in the complaint." *DiFolco* v. *MSNBC Cable LLC*, 622 F.3d 104, 111 (2d Cir. 2010).  "Even where a document is not incorporated by reference, the court may nevertheless consider it where the complaint 'relies heavily upon its terms and effect,' which renders the document 'integral' to the complaint." *Chambers* v. *Time Warner, Inc.*, 282 F.3d 147, 153 (2d Cir. 2002)

(quoting *Int'l Audiotext Network, Inc.* v. *Am. Tel. & Tel. Co.*, 62 F.3d 69, 72 (2d Cir. 1995) (per curiam)).

### 2.    New York General Business Law § 349

New York General Business Law § 349, a consumer protection measure, provides, in relevant part: "Deceptive acts or practices in the conduct of any business, trade or commerce or in the furnishing of any service in [New York] are hereby declared unlawful."  N.Y. Gen. Bus. Law § 349(a).  The law affords a private right of action to "any person who has been injured" by a violation of the section.  *Id.* § 349(h); *see generally Cruz* v. *FXDirectDealer, LLC*, 720 F.3d 115, 122 (2d Cir. 2013).  The reach of the statute is broad, in order to "'provide [the] needed authority to cope with the numerous, ever-changing types of false and deceptive business practices which plague consumers in [New York] State.'"  *Lonner* v. *Simon Prop. Grp., Inc.*, 57 A.D.3d 100, 109-10 (2d Dep't 2008) (citing *Karlin* v. *IVF Am.*, 93 N.Y.2d 282, 290 (N.Y. 1999)).  In that regard, "[t]he purpose of Section 349 is to empower customers, especially the disadvantaged, and to even the playing field of their disputes with better funded and superiorly situated fraudulent businesses."  *Mendez* v. *Bank of Am. Home Loans Servicing*, LP, 840 F. Supp. 2d 639, 657 (E.D.N.Y. 2012).

To establish a violation of § 349, a plaintiff must prove "[i] that the challenged act or practice was consumer-oriented; [ii] that it was misleading in a material way; and [iii] that the plaintiff suffered injury as a result of the deceptive act."  *Stutman* v. *Chem. Bank*, 95 N.Y.2d 24, 29 (N.Y. 2000).  To determine whether conduct may be deceptive under § 349, courts apply "an

objective standard," *Lonner*, 57 A.D.3d at 110 (internal quotation marks omitted), which asks whether the "representation or omission [is] likely to mislead a reasonable consumer acting reasonably under the circumstances," *Gaidon* v. *Guardian Life Ins. Co. of Am.*, 94 N.Y.2d 330, 344 (N.Y. 1999).  *See also Cohen* v. *JP Morgan Chase & Co.*, 498 F.3d 111, 126 (2d Cir. 2007) ("The New York Court of Appeals has adopted an objective definition of 'misleading,' under which the alleged act must be 'likely to mislead a reasonable consumer acting reasonably under the circumstances.'" (quoting *Oswego* v. *Laborers' Local 214 Pension Fund* v. *Marine Midland Bank*, 85 N.Y.2d 20, 26 (N.Y. 1995)).

Conduct "need not reach the level of common-law fraud to be actionable."  *Stutman*, 95 N.Y.2d at 29 (internal citation and quotation marks omitted).  Indeed, precisely "because a private action under § 349 does not require proof of the same essential elements (such as reliance) as common-law fraud, an action under [this section] is not subject to the pleading-with-particularity requirements of Rule 9(b) [of the Federal Rules of Civil Procedure], but need only meet the bare-bones notice-pleading requirements of Rule 8(a)."  *Pelman ex rel. Pelman* v. *McDonald's Corp.*, 396 F.3d 508, 511 (2d Cir. 2005).  But while Section 349 "does not require proof of justifiable reliance, a plaintiff seeking compensatory damages must show that the defendant engaged in a material deceptive act or practice that caused actual, although not necessarily pecuniary, harm."  *Oswego*, 85 N.Y.2d at 26.

**B.      Analysis**

**1.      Plaintiff Cannot Rely on RCNY § 5-59 and NYCAC § 20-700 to Establish GBL § 349 Violations**

In the FAC, Plaintiff's GBL § 349 violations are clearly predicated on Defendants' alleged violations of RCNY § 5-59 and NYCAC § 20-700 (collectively, the "Local Regulations").  Indeed, Count I is labeled as "Violation of 6 RCNY § 5-59 and GBL § 349," and Plaintiff specifically alleges under this Count that, "[b]y violating § 5-59, Defendants have also violated GBL § 349." (FAC ¶ 28).  Similarly, Count II is labeled as "Violation of NYCAC § 20-700 and GBL § 349," and Plaintiff specifically alleges under this Count that "[b]y violating § 20-700, Defendants have also violated GBL § 349." (*Id.* at ¶ 34).

RCNY § 5-59 provides:

> (a) A seller serving food or beverages for consumption on the premises may not add surcharges to listed prices. For example, a restaurant may not state at the bottom of its menu that a 10 percent charge or a $1.00 charge will be added to all menu prices.
>
> (b) A seller may impose a bona fide service charge (such as an added charge for two persons splitting one meal, or a per person minimum charge), if the charge is conspicuously disclosed to the consumer before the food is ordered.
>
> (c) In this section, the term "surcharge" does not include tax.

Rules of the City of New York, tit. 6, § 5-59.  By comparison, NYCAC § 20-700 provides:

> No person shall engage in any deceptive or unconscionable trade practice in the sale, lease, rental, or loan, or in the offering for sale, lease, rental, or loan of any consumer goods or services, or in the collection of consumer debts.

N.Y.C. Admin. Code § 20-700.

In Plaintiff's opposition to Defendants' motion to dismiss, he concedes that "there is no private right of action under either" RCNY § 5-59 or NYCAC § 20-700; he asserts, however, that his claims under GBL § 349 "can stand alone" without reference to the Local Regulations.  (Pl. Opp. 19).  But despite seeming to reverse course, Plaintiff continues to argue that Defendants' alleged violations of the Local Regulations evidence their violations of GBL § 349.  (*See, e.g.*, Pl. Opp. 23-24).

Case law makes clear that Plaintiff's § 349 claims cannot be predicated on alleged violations of the Local Regulations.[4]  For starters, in *Conboy* v. *AT&T Corp.*, 241 F.3d 242, 258 (2d Cir. 2001), the Second Circuit "established that a plaintiff cannot circumvent the lack of a private right of action for violation of a New York state law by pleading his claim under GBL § 349."  *Broder* v. *Cablevision Sys. Corp.*, 418 F.3d 187, 199 (2d Cir. 2005) (citing *Conboy*, 241 F.3d at 258).  In *Conboy*, the plaintiffs argued that the defendant engaged in a "deceptive act" within the meaning of GBL § 349 by violating GBL § 600, "which prohibits a creditor from communicating with 'the debtor or any member of his family or household with such frequency or at such unusual hours or in such a manners as can reasonably be expected to abuse or harass the debtor.'" *Conboy*, 241 F.3d at 257-58 (quoting N.Y. Gen. Bus. Law § 601(b)).

In *Broder*, the Second Circuit extended *Conboy*'s holding to the particular federal law at issue in that case, stating that "[w]ithout deciding whether

---

[4]     Plaintiff's argument that he can rely on the Local Regulations because Defendants rely on those regulations to support their motion misses the mark.  (*See* Pl. Opp. 10). Defendants' discussion of the Local Regulations in response to Plaintiff's citations to them in the FAC does not imbue these Regulations with legal significance for purposes of the Court's analysis.

*Conboy*'s bar on circumvention applies to all federal statutes lacking a private right of action, we hold that it does apply to 47 U.S.C. § 543(d)[,]" which required certain cable operators to have a uniform rate structure in the geographic areas in which they provide cable service.  *Broder*, 418 F.3d at 199. The Court cannot find, and Plaintiff does not provide, any reason why an exception should be made to allow Plaintiff to use the New York City-based Local Regulations as a predicate for a GBL § 349 violation, particularly where analytically identical efforts have been expressly rejected by the Second Circuit for state laws and at least one federal law.

In point of fact, contrary to Plaintiff's arguments, decisions from state and federal courts in New York support the conclusion that Plaintiff cannot rely on violations of RCNY § 5-59 and NYCAC § 20-700 to state a cause of action under GBL § 349.  *See Pelman* v. *McDonald's Corp.*, 237 F. Supp. 2d 512, 524 n.10 (S.D.N.Y. 2003) (treating the plaintiff's claims under § 20-700 and GBL § 349 as distinct, and dismissing claims to the "extent they assert claims pursuant to [§ 20-700 of] the Administrative Code," where the plaintiff alleged that the same conduct violated §§ 349 and 350 of the New York General Business Law as well as § 20-700); *Galerie Furstenberg* v. *Coffaro*, 697 F. Supp. 1282, 1292 (S.D.N.Y. 1988) (same, except that the plaintiff's claims were brought under §§ 20-700 to 20-706 and GBL § 350); *cf. Brissenden* v. *Time Warner Cable of New York City*, 25 Misc.3d 1084, 1092 (N.Y. Sup. Ct. 2009) ("[T]here is no private right of action for a violation of 47 U.S.C. § 543(f), and plaintiff cannot use GBL § 349 to circumvent the lack of private right of action

under this federal statute."); *but see Riordan* v. *Nationwide Mut. Fire Ins. Co.*, 756 F. Supp. 732, 739 (S.D.N.Y. 1990) ("Plaintiffs' Section 349 claim is in no way undermined by their assertion that Nationwide's claim settlement practice is violative of, and directly treated by, New York Insurance Law § 2601, under which there is no private cause of action.").

To allow Plaintiff to use the Local Regulations to assert a claim under GBL § 349 that would otherwise be unavailable would be to apply GBL § 349 far more broadly that the New York legislature intended.  Section 349 "does not grant a private remedy for every improper or illegal business practice, but only for conduct that tends to deceive consumers." *Schlessinger* v. *Valspar Corp.*, 21 N.Y.3d 166, 172 (N.Y. 2013).  It follows then that, even assuming Defendants' conduct violated RCNY § 5-59 or NYCAC § 20-700, such a violation would not demonstrate a *per se* violation of GBL § 349.  In short, Plaintiff cannot use RCNY § 5-59 and NYCAC § 20-700 to establish a violation of § GBL 349; instead, Plaintiff must establish each element of GBL § 349.  *Brissenden*, 25 Misc.3d at 1092 ("Plaintiff must still prove each of the elements of an unfair trade practice, including actual injury.").  That being the case, the Court must assess whether Plaintiff states a claim under § 349.[5]

### 2. Count I of the FAC Fails to State a Claim Under GBL § 349

For the purposes of this motion, Defendants do not contest that Defendants' conduct at issue constituted "consumer-oriented conduct."  (Def.

---

[5]     Because the Local Regulations are not evidence, in and of themselves, that Defendants violated GBL § 349, the Court need not determine whether the Defendants' alleged conduct violated the Local Regulations.

Br. 6 ("Accepting for the purposes of this motion that Defendants are engaged in consumer conduct....")).  Consequently, the Court need only assess the second and third elements of the GBL § 349 claim — that the conduct was misleading in a material way and that the plaintiff suffered injury as a result of the deceptive act.  *Stutman*, 95 N.Y.2d at 29.

> **a.  Plaintiff Has Not Alleged a Materially Misleading Act or Practice**

Plaintiff argues that Defendants' imposition of an 18% gratuity is deceptive because a "gratuity" is a "voluntary act," whereas the 18% charge here was not voluntary, and as such it was "materially misleading to label this improper surcharge as a 'gratuity.'" (Pl. Opp. 7-8).[6]  Stated more succinctly, Plaintiff asserts that "the automatic addition of a fixed 'gratuity' of 18% ... is a contradiction in terms, and therefore, deceptive." (*Id.* at 8).  In practice, Plaintiff claims that a restaurant patron will not question whether they need to pay the gratuity.  Plaintiff's position fails to meet the objective standard under GBL § 349 that requires that the omission is "likely to mislead a reasonable consumer acting reasonably under the circumstances." *Gaidon*, 94 N.Y.2d at 344.

Where a defendant "fully disclosed the terms and conditions of an alleged deceptive transaction that caused harm to plaintiff," an action under GBL

---

[6]   Defendants argue that "any consumer who declines to pay the 18% gratuity is not required to do so." (Def. Br. 10).  Plaintiff, however, alleges that "[he] was not asked whether the '18% Gratuity' was satisfactory or whether we wanted to pay a lesser gratuity."  (FAC ¶ 19).  Moreover, there is nothing in the record to evidence that consumers were notified that they need not pay the 18% gratuity.  Consequently, Defendants' assertion neither aids their argument, nor impacts the Court's analysis.

15

§ 349 will not lie.  *Derbaremdiker* v. *Applebee's Intern., Inc.*, No. 12 Civ. 1058

(KAM), 2012 WL 4482057, at *4 (E.D.N.Y. Sept. 26, 2012) ("New York courts

have dismissed claims for having failed to satisfy [the materially misleading]

element where a defendant fully disclosed the terms and conditions of an

alleged deceptive transaction that caused harm to the plaintiff."); *Sand* v.

*Ticketmaster-N.Y., Inc.*, 207 A.D.2d 687, 687 (1st Dep't 1994) ("Although

plaintiff contends defendant's fees are excessive, there is no dispute that such

fees are always disclosed by Ticketmaster.  Therefore, the challenged business

practices do not violate the prohibition against deceptive business practices

under General Business Law § 349, since the record shows that these practices

are fully disclosed prior to [the sale of tickets]." (internal quotation marks

omitted)); *Zuckerman* v. *BMG Direct Mktg., Inc.*, 290 A.D.2d 330, 331 (1st Dep't

2002) (holding that shipping and handling fees were not deceptive where those

amounts were disclosed); *Lewis* v. *Hertz Corp.*, 181 A.D.2d 493, 494 (1st Dep't

1992) ("[T]he challenged business practices [do not] violate the prohibition

against deceptive business practices under General Business Law § 349, since

the record shows that these practices are fully disclosed."); *Shovak* v. *Long Is.

Commercial Bank*, 50 A.D.3d 1118, 1120 (2d Dep't 2008) ("[T]here was no

materially misleading statement, as the record indicated that the yield spread

premium, which is not per se illegal, was fully disclosed to the plaintiff."); *Lum*

v. *New Century Mortg. Corp.*, 19 A.D.3d 558, 559 (2d Dep't 2005) ("Here, there

was no materially misleading statement, as the record indicated that the [Yield Spread Premium], which is not per se illegal, was disclosed to the plaintiff.").[7]

Here, the terms and conditions were completely and conspicuously indicated on the menu so that each patron was expressly informed as to the cost of dining at the Restaurants prior to voluntarily placing his or her order. Plaintiff, as well as any other customer, had the option of leaving the restaurant upon seeing this disclosure.  That social norms may make a person feel uncomfortable in such a situation does not result in a GBL § 349 violation. Moreover, in New York City gratuities of between 18% and 20% are not uncommon practice, thereby undercutting Plaintiff's argument that patrons were deceptively tricked into paying a gratuity that they would not otherwise have paid.

Plaintiff's efforts to distinguish *Derbaremdiker*, 2012 WL 4482057, at *4, and *Michaelson* v. *Ritz-Carlton Hotel Co.*, No. G032032, 2004 WL 553008 (Cal. App. 6th Dist. Mar. 22, 2004) (Pl. Opp. 9-10), two cases relied upon by Defendants (Def. Br. 7-8), are unavailing.[8]  In *Derbaremdiker*, the court assessed whether certain statements disclosed in a sweepstakes were false and

---

[7]   The record does not demonstrate that Defendants' conduct is "per se illegal" so as to fall within any arguable exception created by *Shovak*, 50 A.D.3d at 1120, or *Lum*, 19 A.D.3d at 559.  (*See* Def. Br., Ex. 3).  The Court need not assess whether Defendants' conduct violated RCNY § 5-59, because even assuming it did (a conclusion that is not established by the record), that would not render it "per se illegal." *Cf. Samiento* v. *World Yacht, Inc.*, No. 05 Civ. 117224, 2006 N.Y. Misc. LEXIS 2419, at *7-8 (Sup. Ct. N.Y. Cnty. Aug. 10, 2006) (concluding that decisions of the Industrial Board of Appeals and pamphlets issued by the New York State Attorney General's Office "do not carry the force of law and cannot be used to overrule" the applicable case law).

[8]   The Court notes, however, that neither *Derbaremdiker* nor *Michaelson* concerned GBL § 349 or was issued by the Second Circuit.  Consequently, while the cases are persuasive, they are not precedential.

misleading.  Although Plaintiff is correct that the court relied on the terms and
conditions that were fully disclosed in the Official Rules, as well as those
included on the receipt received by the participant, in reaching its conclusion
that the receipt was not materially misleading, the court made clear that the
receipt itself was not materially misleading because of the disclosures provided
therein.  2012 WL 4482057, at *5 ("Whether the receipt is considered by itself
or together with the full disclosures on the Website and the Official Rules, the
receipt was not materially misleading to a reasonable consumer acting
reasonably.").  Because of the full disclosure of terms and conditions of the
sweepstakes, the court held that the plaintiff failed to allege facts sufficient to
satisfy the 'materially misleading' standard under § 349.  *Id.* at *6.  This
reasoning is equally applicable here, where the terms of the gratuity (and the
fact that it was a gratuity) were disclosed on the Restaurants' menus.

   *Michaelson* is even more on point.  There, the court held that an
automatic gratuity that was added to a room service charge did not violate a
California state consumer protection law that prohibited business practices
that were "unlawful, unfair, or fraudulent."  2004 Cal. App. Unpub. LEXIS
2609, at *5.  The menu in that case indicated that "[a] taxable 16% gratuity
charge and applicable sales tax will be added to food and beverage prices."  *Id.*
at *2.  The plaintiff in *Michaelson* argued, as does Plaintiff here, that a "taxable
gratuity" was not a gratuity at all because it was not voluntary, and that the
defendant had no legal authority to charge a "mandatory gratuity."  *Id.* at *14.
The court rejected the plaintiff's argument, holding that the defendant's

conduct in listing the gratuity charge on the menu was not "unfair, unlawful, or fraudulent" within the meaning of the California state consumer protection statute.  *Id.* at *18-19.

The Court concludes that Defendants' 18% gratuity was not materially misleading as required under § 349.

### b.  Plaintiff Has Not Alleged a Cognizable Injury

Even assuming Plaintiff adequately pleaded that the alleged deceptive conduct was materially misleading, he has failed to plead the requisite injury, and thus cannot survive a motion to dismiss Count I.

Plaintiff argues that the injury incurred for the 18% gratuity charge is "that the entire charge was improper and that, therefore, it should be returned to plaintiff and the class." (Pl. Opp. 13).  Plaintiff's alleged injury is not cognizable because Plaintiff has failed to allege an actual or pecuniary harm, as required under § 349, that is separate and apart from the alleged deception itself.

Under § 349, deception and injury must be separately pled.  *Edin* v. *Kangadis Food Inc.*, No. 13 Civ. 2311 (JSR), 2013 WL 6504547, at *5 (S.D.N.Y. Dec. 11, 2013).  In practice, "[t]he deception is the false and misleading label, and the injury is the purchase price."  *Id.*  Two cases are illustrative of this point.  In the leading New York Court of Appeals case on point, *Small* v. *Lorillard Tobacco Co.*, the plaintiffs alleged that the defendants used deceptive commercial practices to sell their cigarettes and that the plaintiff would not have bought the cigarettes absent the deceptive practices.  94 N.Y.2d 43, 51

19

(N.Y. 1999).  For relief, the plaintiffs sought only the reimbursement of the

purchase costs of the cigarettes that they claimed they would not have

purchased, but for defendants' fraudulent and deceptive practices.  *Id.*  Again,

similar to Plaintiff's arguments here, the *Small* plaintiffs contended that the

injury was that "defendants' deception prevented them from making free and

informed choices as consumers," and that "consumers who buy a product that

they would not have purchased absent a manufacturer's deceptive commercial

practices, have suffered an injury under [GBL] § 349."  *Id.* at 56.  The court

expressly rejected the plaintiff's argument, stating that "[t]heir theory

contain[ed] no manifestation of either pecuniary or 'actual' harm," because

their GBL § 349 cause of action set forth "deception as both act and injury."

*Id.*

Another example is *Baron* v. *Pfizer, Inc.*, 42 A.D.3d 627, 629 (3d Dep't

2007).  In *Baron*, the plaintiff sought a refund of the purchase price of a

medication on the ground that she would not have purchased the drug absent

the defendant's deceptive practices.  The Appellate Division affirmed the trial

court's holding that the plaintiff had failed to allege a cognizable injury because

her claim set forth "deception as both act and injury, and thus, contain[ed] no

manifestation of either pecuniary or actual harm.  *Id.* (internal quotation marks

omitted).

The FAC's allegations are indistinguishable from the assertions rejected

by the courts in *Small* and *Baron*, and thus similarly fail to allege injury under

GBL § 349.  Plaintiff's alleged deception — the 18% gratuity — is identical to

20

the pleaded injury.  Plaintiff's request for reimbursement of the 18% gratuity underscores this conclusion.  Plaintiff's allegations, construed in the light most favorable to him, are that he may not have acceded to the 18% gratuity had Defendants provided a different disclosure about that charge.  Such allegations are not sufficient to state a claim under § 349.  *See Campbell* v. *Barclays Bank PLC*, 24 Misc.3d 1210(A), 2009 WL 1912098, at *6 (Sup. Ct. N.Y. 2009) (unreported) ("Just because plaintiff purchased goods that he might not have otherwise purchased does not constitute actual harm, since such a theory improperly 'sets forth deception as both act and injury.'" (quoting *Small*, 96 N.Y.2d at 56)).  Plaintiff's failure to allege actual harm and a qualifying injury is fatal to his claim under § 349, and an additional basis to dismiss Count I.

In sum, because Plaintiff has failed to plead adequately the elements of "materially misleading" conduct and injury as required under GBL § 349, he has not set forth a plausible entitlement to relief with respect to Defendants' 18% gratuity charge, and consequently Count I of the FAC is dismissed.

### 3.     Count II of the FAC Fails to State a Claim Under GBL § 349

Plaintiff alleges that Defendants also violated GBL § 349 by not listing certain beverage prices, including those for beer and non-alcoholic beverages, on their menus.  (FAC ¶ 20).  An omission of information, as Plaintiff alleges here, "can be actionable under Section 349."  *Dupler* v. *Costco Wholesale Corp.*, 249 F.R.D. 29, 43 (E.D.N.Y. 2008).

As with Count I, and solely for the purposes of this motion, Defendants do not contest that their conduct constituted "consumer-oriented conduct"

(Def. Br. 11), and thus the Court need only address the remaining two elements of a § 349 violation.

### a.   Plaintiff Does Not Have Standing to Raise Count II

#### i.   Standing Law Generally

"Article III, § 2, of the Constitution limits the jurisdiction of federal courts to 'Cases' and 'Controversies,' which restrict the authority of federal courts to resolving the legal rights of litigants in actual controversies." *Genesis Healthcare Corp.* v. *Symczyk,* 133 S. Ct. 1523, 1528 (2013) (internal quotation marks omitted); *see also Valley Forge Christian Coll.* v. *Americans United for Separation of Church and State, Inc.*, 454 U.S. 464, 471 (1982) ("The requirements of Art. III are not satisfied merely because a party requests a court of the United States to declare its legal rights, and has couched that request for forms of relief historically associated with courts of law in terms that have a familiar ring to those trained in the legal process.").

"As an incident to the elaboration of this bedrock requirement," a plaintiff seeking to maintain an action in federal court is "always required" to have standing. *Valley Forge Christian College*, 454 U.S. at 471; *see also Lujan* v. *Defenders of Wildlife*, 504 U.S. 555, 560 (1992) ("One of those landmarks, setting apart the 'Cases' and 'Controversies' that are the justiciable sort referred to in Article III — serving to identify those disputes which are appropriately resolved through the judicial process — is the doctrine of standing." (internal citation and quotation marks omitted)).  To that end, the issue of standing is "the threshold question in every federal case, determining

the power of the court to entertain the suit." *Kiryas Joel Alliance* v. *Vill. of Kiryas Joel*, 495 F. App'x 183, 188 (2d Cir. 2012) (summary order).

As the Supreme Court established in *Lujan*, "the irreducible constitutional minimum of standing contains three elements":

> First, the plaintiff must have suffered an injury in fact — an invasion of a legally protected interest which is (a) concrete and particularized and (b) actual or imminent, not conjectural or hypothetical. Second, there must be a causal connection between the injury and the conduct complained of — the injury has to be fairly traceable to the challenged action of the defendant, and not the result of the independent action of some third party not before the court. Third, it must be likely, as opposed to merely speculative, that the injury will be redressed by a favorable decision.

504 U.S. at 560 (internal citations and quotation marks omitted). The "[s]tanding doctrine functions to ensure, among other things, that the scarce resources of the federal courts are devoted to those disputes in which the parties have a concrete stake." *Friends of the Earth, Inc.* v. *Laidlaw Envtl. Services (TOC), Inc.*, 528 U.S. 167, 191 (2000); *see also Genesis Healthcare Corp.*, 133 S. Ct. at 1528 ("This requirement ensures that the Federal Judiciary confines itself to its constitutionally limited role of adjudicating actual and concrete disputes, the resolutions of which have direct consequences on the parties involved.").

In accordance with this precept, a plaintiff must establish standing for each claim and form of relief sought. *Carver* v. *City of New York*, 621 F.3d 221, 225 (2d Cir. 2010). In addition, standing "'must exist at the commencement of litigation.'" *Davis* v. *Fed. Election Comm'n*, 554 U.S. 724, 732 (2008) (citation omitted). "On a motion to dismiss, it is the burden of the party who seeks

standing to sue to allege clearly facts demonstrating that he is a proper party to invoke judicial resolution of the dispute." *Madu, Edozie & Madu, P.C.* v. *SocketWorks Ltd. Nigeria*, 265 F.R.D. 106, 120 (S.D.N.Y. 2010). In that regard, "[s]tanding cannot be inferred from averments in the pleadings, but rather must appear affirmatively in the record." *Id.*

### ii.    The Court Can and Will Consider Extrinsic Evidence in Its Standing Analysis

Defendants take issue with the first requirement, arguing that Plaintiff has failed to allege facts demonstrating an injury because the FAC does not allege that Plaintiff ever purchased a beverage for which no price was listed. (Def. Br. 15). To counter Defendants' argument, Plaintiff submitted a receipt that he received from Red Lobster for a meal on June 5, 2013, and an attorney declaration from Robert Abrams (the "Abrams Declaration") declaring that the receipt, which is barely legible, "shows that Plaintiff purchased a 'coke' for which he paid $3.09." (Abrams Decl. ¶ 5 & Ex. D). In response, Defendants submit that the Court should disregard the Abrams Declaration and Red Lobster receipt because it may not be properly considered on a motion to dismiss. (Reply 9). Defendants' contention, however, overlooks the fact that the limitations placed on a court in reviewing a motion to dismiss for failure to state a claim are not applicable where, as here, the challenge is to standing. (*Id.*).[9]

---

[9]     When reviewing a motion under Rule 12(b)(6), a court's review is "limited to facts stated on the face of the complaint and in documents appended to the complaint or incorporated in the complaint by reference, as well to matters of which judicial notice may be taken." *Automated Salvage Transp., Inc.* v. *Wheelabrator Env't Sys., Inc.*, 155 F.3d 59, 67 (2d Cir. 1998). Although Defendants' motion is brought under Rule

Where a plaintiff lacks standing, a court is divested of subject matter jurisdiction.  *Cent. States Se. & Sw. Areas Health and Welfare Fund* v. *Merck-Medco Managed Care, L.L.C.*, 433 F.3d 181, 198 (2d Cir. 2005) ("If plaintiffs lack Article III standing, a court has no subject matter jurisdiction to hear their claim."); *accord Altman* v. *Bedford Cent. Sch. Dist.*, 245 F.3d 49, 69 (2d Cir. 2001) ("The Constitution limits the jurisdiction of Article III courts to matters that present actual cases or controversies.  This limitation means that when a plaintiff brings suit in federal court, she must have standing to pursue the asserted claims." (internal citation omitted)), *cert. denied,* 534 U.S. 827 (2001).  "[T]he plaintiff 'bears the burden of showing by a preponderance of the evidence that subject matter jurisdiction exists.'"  *Arar* v. *Ashcroft*, 532 F.3d 157, 168 (2d Cir. 2008) (citations omitted) (quoting *APWU* v. *Potter*, 343 F.3d 619, 623 (2d Cir. 2003)).  Where subject matter jurisdiction is contested, as it is here, a district court is permitted to consider evidence outside the pleadings, such as affidavits and exhibits.  *See Zappia Middle East Constr. Co.* v. *Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) ("On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, the court may resolve the disputed jurisdictional fact issues by referring to evidence outside of the pleadings, such as affidavits, and if necessary, hold an evidentiary hearing."); *accord Tandon* v. *Captain's Cove Marina of Bridgeport, Inc.*, 752 F.3d

------

12(b)(6), their argument that Plaintiff lacks standing to bring a claim based on the unlisted beverage prices is, analytically, a motion under Rule 12(b)(1).  *See Alliance for Envtl. Renewal, Inc.* v. *Pyramid Crossgates Co.*, 436 F.3d 82, 89 n.6 (2d Cir. 2006) ("Although we have noted that standing challenges have sometimes been brought under Rule 12(b)(6), as well as Rule 12(b)(1), the proper procedural route is a motion under Rule 12(b)(1) (internal citations omitted)).  Consequently, the Court will assess it as such.

239 (2d Cir. 2014) ("[W]here jurisdictional facts are placed in dispute, the court has the power and obligation to decide issues of fact by reference to evidence outside the pleadings, such as affidavits.").  Accordingly, consideration of the extrinsic evidence — the Abrams Declaration and the Red Lobster receipt — submitted in support of Plaintiff's opposition to Defendants' motion to dismiss is entirely proper.  *See Harty* v. *Simon Property Grp., L.P.*, 428 F. App'x 69, 71 (2d Cir. 2011) (summary order) (holding that the plaintiff's amended complaint and affidavit submitted in opposition to the defendant's motion to dismiss were "sufficient to support a plausible inference at the pleading stage" that the plaintiff had standing); *Baldessarre* v. *Monroe-Woodbury Cent. Sch. Dist.*, 820 F. Supp. 2d 490, 495 n.2 (S.D.N.Y. 2011) ("[B]ecause the Court has considered whether it has subject matter jurisdiction over Plaintiffs' claims under Rule 12(b)(1), the Court will still consider the Eulau Affidavit and the 2010-2011 IEP submitted by Defendants to the extent that these documents relate to the subject matter jurisdiction of the Court.").

### iii.   Plaintiff Has Failed to Allege a Cognizable Injury

When a court "assess[es] a lack-of-standing argument on the basis of the pleadings, … we take as true the factual allegations contained in the complaint."  *WC Capital Mgmt., LLC* v. *UBS Secs., LLC*, 711 F.3d 322, 329 (2d Cir. 2013).  A "particular injury" requires "that the injury must affect the plaintiff in a personal and individual way."  *Arizona Christian Sch. Tuition Org.* v. *Winn*, 131 S. Ct. 1436, 1442 (2011).  Although the Court accepts that Plaintiff purchased a beverage at Red Lobster, an allegation absent from the

26

FAC but submitted in the Abrams Declaration, Plaintiff still fails to allege an injury in fact with respect to Defendants' not listing prices for certain beverages.

Consistent with the FAC's failure to allege that Plaintiff purchased a beverage, it makes no mention of any injury, financial or otherwise, incurred by Plaintiff as a result of Defendants' failure to list certain beverage prices. Moreover, the Abrams Declaration provides no further indication that Plaintiff suffered an injury on which subject matter jurisdiction is based.  Instead, it merely attests to Plaintiff's purchase of the beverage, and attaches an essentially illegible receipt to prove same.  Neither the FAC, nor any other document that the Court may consider, attests for instance, that Plaintiff would not have purchased the beverage if the price had been listed on the menu, or that Red Lobster's beverages were actionably more costly than other restaurants, such that Plaintiff was injured by the mere purchase of the beverage (even assuming such an allegations would be sufficient for standing purposes).  Instead, the FAC limits itself to allegations defining the Class as persons "who were *presented* with menus that offered beverages whose prices were not indicated," and seeks reimbursement "for the price charged for *any items* for which no price was listed on the menus at the Restaurants."  (FAC ¶¶ 1, 35 (emphasis added)).  The injury, therefore, is predicated simply on the offering of certain beverages without listing the price, and not on the purchase of beverages that were deceptively priced or that caused Plaintiff, or any

27

member of the class for that matter, to incur a charge that was more than anticipated or voluntarily paid.[10]

In his opposition, Plaintiff claims that the price he paid was "approximately $1.50 above a standard price for Coke as discovery will show." (Pl. Opp. 15 n.10).  Plaintiff also asserts for the first time in his opposition papers that the injury for Defendants' failure to list certain beverage prices "should be the difference between the price of the drinks and a reasonable price."  (*Id.* at 13).  Plaintiff's attempt to remedy his deficiencies in pleading through argument in opposition to Defendants' motion to dismiss cannot suffice.  Quite the opposite: Plaintiff's arguments underscore the absence of the necessary factual predicates on which this Court can base its subject matter jurisdiction.  *See Lipton* v. *Nature Co.*, 71 F.3d 464, 469 (2d Cir. 1995) ("[M]ere conclusory allegations or denials in legal memoranda or oral argument are not evidence." (internal quotation marks omitted)); a*ccord Ameti* v. *Holder*, 536 F. App'x 126, 127 (2d Cir. 2013) (summary order) ("statements of counsel in a brief are not evidence" (citing *INS* v. *Phinpathya*, 464 U.S. 183, 188 n.6 (1984)).

The record demonstrates that the FAC's allegations regarding the unlisted beverages plead nothing more than Defendants' providing customers with menus that do not list prices for certain beverages, which, according to

---

[10]   In making this observation, the Court does not suggest that Plaintiff could rely on injury to a Class member to establish standing where he suffered none.  *See Cent. States Se. and Sw. Areas Health and Welfare Fund,* 433 F.3d at 199 ("The Supreme Court has held that 'if none of the named plaintiffs purporting to represent a class establishes the requisite of a case or controversy with the defendant[], none may seek relief on behalf of himself or any other member of the class." (quoting *O'Shea* v. *Littleton,* 414 U.S. 488, 494 (1974)); *see also Allee* v. *Medrano,* 416 U.S. 802, 829 (1974) (Burger, C.J., concurring in part and dissenting in part) ("Standing cannot be acquired through the back door of a class action.").

28

Plaintiff, violated NYCAC § 20-700.  There is no suggestion that Plaintiff, or any member of the Class, has or will sustain any injury as a result of Defendants' practice.  Without such allegations, Plaintiff's claim predicated solely on Defendants' alleged violation of NYCAC § 20-700 does not create an injury sufficient for Article III standing.  *Cf. Powers* v. *British Vita, P.L.C.*, 57 F.3d 176, 189 (2d Cir. 1995) ("[A] plaintiff must show that the defendant's violations of the RICO statute caused his injuries in order to have standing for a RICO claim."); *SCM Corp.* v. *Radio Corp. of Am.*, 407 F.2d 166, 171 (2d Cir. 1969) ("Standing to sue was not given by Congress to any and every citizen who, motivated by public spirit or possibly some baser reason, would set himself up as a watchdog of business behavior.  Congress properly bestowed the right to sue only on such persons as might be injured in their business or property by reason of anything forbidden in the antitrust laws.").

Accordingly, Plaintiff does not have standing to pursue Count II of the FAC because he has failed, on the evidence the Court may properly consider, to demonstrate that he has suffered an injury in fact.  For that reason, Count II of the FAC is dismissed.

### b.    Plaintiff Has Failed to Allege a Materially Misleading Act or Practice

Separately, Count II fails to state actionable conduct under GBL § 349.  As noted, Plaintiff's beverage claim is predicated on his allegation that

> [b]y failing to list prices for beers and non-alcoholic beverages on their menus, the Restaurants have violated the deceptive trade practice provision § 20-700 since the absence of prices has the capacity, tendency and effect of misleading customers into believing that prices for the drinks and the beers on the menu are

> the same when in reality [the restaurants] can charge any price for
> any item.

(FAC ¶ 32 (internal quotation marks omitted)).  In support, Plaintiff notes that
Defendants were issued citations for administrative violations of NYCAC § 20-
700 "for failing to include beverage prices on their menus."  (*Id.* at ¶¶ 22-23).
As the Court has already held, a violation of NYCAC § 20-700 does not
establish a *per se* claim under GBL § 349.  The remaining question, whether a
restaurant not listing beverage prices on their menus violates GBL § 349,
appears to be one of first impression, which is perhaps why the parties'
arguments in this regard rely on case law from other jurisdictions and not
involving GBL § 349.  Nonetheless, despite the paucity of relevant case law, it is
clear that Plaintiff has failed to allege a plausible claim.

     In cases alleging a deceptive act based on an omission, it is not sufficient
for a plaintiff to point solely to the omission.  *Pelman*, 237 F. Supp. 2d at 529
("[B]ecause this is a purportedly deceptive act based on an omission, it is not
sufficient for the plaintiffs to point to the omission alone.").  Instead, the
plaintiff must show why the omission was deceptive by alleging that the
information omitted was solely within the defendant's "possession or that a
consumer could not reasonably obtain such information."  *Id.*; *see Oswego
Laborers' Local 214 Pension Fund* v. *Marine Midland Bank*, 85 N.Y.2d 20, 26
(N.Y. 1995) (identifying that in cases involving omissions, "the statute surely
does not require businesses to ascertain consumers' individual needs and
guarantee that each consumer has all relevant information specific to its
situation[,]" but provided an exception "where the business alone possesses

material information that is relevant to the customer and fails to provide this information"); *accord Milich* v. *State Farm Fire & Cas. Co.*, 513 F. App'x 97, 99 (2d Cir. 2013) (summary order).

Plaintiff has not alleged facts to demonstrate that he could not "reasonably obtain" the unlisted beverage prices.  The absence of such allegations is fatal to Plaintiff's claim.  *Beth Israel Med. Ctr.* v. *Verizon Bus. Network Services, Inc.*, No. 11 Civ. 4509 (RJS), 2013 WL 1385210, at *8 (S.D.N.Y. Mar. 18, 2013) (dismissing the plaintiff's claim under GBL § 349 where the plaintiff failed to allege that defendant possessed material information relevant to the customer that the plaintiff was unable to obtain). Plaintiff's argument that a customer should not be required to inquire as to the price of "approximately 50 beverages before a meal" (Pl. Opp. 15), does not make his GBL § 349 claim any more actionable.  To the contrary, it highlights that Plaintiff (and, by extension, any other customer of Defendants' restaurants) was entirely capable of obtaining the omitted beverage prices.  The Court does not see how Defendants' decision to not list certain beverage prices — in and of itself, and without any indication that Defendants concealed the prices of those beverages or engaged in any other conduct related to the prices — meets the objective test of being "likely to mislead a reasonable consumer acting reasonably under the circumstances."  *Gaidon*, 94 N.Y.2d at 344 (internal quotation marks omitted).  Count II thus fails on the merits.

### 4.       Plaintiff's Request for Leave to Amend the FAC Is Denied

In a last-ditch effort to save his claims, Plaintiff, in the conclusion to his opposition papers, states: "Should this Court deem it necessary, Plaintiff respectfully requests an opportunity to amend the FAC as required." (Pl. Opp. 24).

Rule 15(a)(2) of the Federal Rules of Civil Procedure provides that a court "should freely give leave [to amend] when justice so requires." Fed. R. Civ. P. 15(a)(2); *see also Foman* v. *Davis*, 371 U.S. 178, 182 (1962) (instructing that the mandate that leave to amend should "be freely given when justice so requires ... is to be heeded"); *Ruffolo* v. *Oppenheimer & Co.*, 987 F.2d 129, 131 (2d Cir. 1993). "[I]t is within the sound discretion of the district court whether to grant or deny leave to amend." *Zahra* v. *Town of Southold*, 48 F.3d 674, 685 (2d Cir. 1995). Moreover, "[t]he rule in this Circuit has been to allow a party to amend its pleadings in the absence of a showing by the nonmovant of prejudice or bad faith." *Block* v. *First Blood Assoc.*, 988 F.2d 344, 350 (2d Cir. 1993).

When determining whether to grant leave to amend, district courts consider: (i) whether the party seeking the amendment has unduly delayed; (ii) whether that party is acting in good faith; (iii) whether the opposing party will be prejudiced; and (iv) whether the amendment will be futile. *See Foman*, 371 U.S. at 182; *see also Gormin* v. *Hubregsen*, No. 08 Civ. 7674 (PGG), 2009 WL 35020, at *1 (S.D.N.Y. Jan. 6, 2009) (granting motion). In accord with this last factor, if "the plaintiff is unable to demonstrate that he would be able to amend his complaint in a manner which would survive dismissal, opportunity

to replead is rightfully denied." *Hayden* v. *Cnty. of Nassau*, 180 F.3d 42, 53 (2d Cir. 1999).

At the same time, "[i]n order to meet the requirements of particularity in a motion to amend, a complete copy of the proposed amended complaint must accompany the motion so that both the Court and opposing parties can understand the exact changes sought." *Segatt* v. *GSI Holding Corp.*, No. 07 Civ. 11413 (WHP), 2008 WL 4865033, at *4 (S.D.N.Y. Nov. 3, 2008) (internal quotation marks omitted).  Failure to provide a proposed amended complaint, however, "is not fatal where there is no undue prejudice to defendant."  *Id.*; *see also Christiana Gen. Ins. Corp. of N.Y.* v. *Great Am. Ins. Co.*, 745 F. Supp. 150, 164 (S.D.N.Y. 1990).  Even then, however, a plaintiff must provide some factual detail or evidence as to the proposed amendment.  *See, e.g., Horoshko* v. *Citibank, N.A.*, 373 F.3d 248, 249 (2d Cir. 2004) ("Because an amendment is not warranted '[a]bsent some indication as to what [the plaintiffs] might add to their complaint in order to make it viable,' the District Court was under no obligation to provide the [plaintiffs] with leave to amend their complaint." (quoting *Nat'l Union of Hosp. & Health Care Emp., RWDSU, AFL-CIO* v. *Carey*, 557 F.2d 278, 282 (2d Cir. 1977)).

Plaintiff has provided no indication as to how he would amend the FAC so as to cure it of the deficiencies identified in this Opinion.  Indeed, Plaintiff includes only one sentence requesting leave to amend, stating nothing more on this subject.  The Court also notes that Plaintiff has amended his complaint three times since this action was removed to this Court.  It goes without saying

that he has had ample opportunity to perfect his pleading, yet has failed to do so.  Because Plaintiff has failed to provide any factual detail or evidence as to the proposed amendments on which the Court could assess their futility, and because allowing Plaintiff to amend his complaint yet another time may prejudice Defendants, the Court will not grant Plaintiff's request to amend.  *See In re WorldCom, Inc. Sec. Litig.*, 303 F. Supp. 2d 385, 391 (S.D.N.Y. 2004) ("The plaintiffs have not included any proposed amended pleading or indicated what they might allege to cure the deficiency identified in the motion to dismiss.  The plaintiffs have already been permitted to file one amended pleading through the filing of this Consolidated Amended Class Action Complaint.  In the absence of any identification of how a further amendment would improve upon the Complaint, leave to amend must be denied as futile.").

## CONCLUSION

For the foregoing reasons, Defendants' motion to dismiss the FAC is GRANTED in full and Plaintiff's motion to amend the FAC is DENIED.

The Clerk of Court is directed to terminate Docket Entry No. 61 and mark the case closed.

SO ORDERED.

Dated:      July 9, 2014
            New York, New York

_____
     KATHERINE POLK FAILLA
     United States District Judge

34